KLOVSKI *v.* MARTIN FIREPROOFING CORPORATION.

1. NEGLIGENCE—INVITEE—LICENSEE.
   There must be an invitation or a license before one may be legally in the position of an invitee or licensee.

2. SAME—ROOFING CONTRACTOR—INVITEES—LICENSES.
   Presence of ladder, owned by defendant, a co-subcontractor of plaintiff's employer, and use thereof by plaintiff to reach roof area upon construction of which plaintiff was to assist did not constitute plaintiff an implied or express invitee or licensee to whom defendant owed any affirmative duty of making the premises safe or to warn him of a known dangerous condition.

3. SAME—SAFE PLACE TO WORK.
   The doctrine of providing a safe place in which to work does not apply to construction work which, by its very nature, involves unusual risks in a progressively changing situation, especially where plaintiff was not injured while using defendant's equipment nor injured in an area turned over to plaintiff's employer for performance of its operations but left in an unsafe condition through defendant's negligence.

Appeal from Wayne; Souris (Theodore), J. Submitted January 6, 1961. (Docket No. 45, Calendar No. 48,457.) Decided April 26, 1961.

Case by William Klovski against Martin Fireproofing Corporation, a New York corporation, a subcontractor, and others for injuries sustained in fall through unfinished roof during construction work. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 35 Am Jur, Master and Servant § 187.
Duty of owner of premises to furnish independent contractor or his employee a safe place of work, where contract is for repairs. 31 ALR2d 1375.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*George L. Downing,* of counsel), for plaintiff.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin &* *Kerr,* for defendant.

SMITH, J. This is an action for personal injuries. The accident occurred in the course of construction of a building. The general contractors were Darin & Armstrong. Roofing subcontractors were Detroit Cornice & Slate Company, plaintiff's employer, and the Martin Fireproofing Corporation, of New York, defendant and appellee before us.

The roofing work here under consideration was a 2-stage operation. Martin Fireproofing first placed fiberglass (or fiberboard, as it is sometimes referred to in the record) over inverted T-irons. The fiberglass, at this stage of the process, and as placed upon the structural iron work, was not capable of supporting substantial weight. Wire mesh was next placed over the fiberglass and covered with 2 or 3 inches of wet gypsum. After a couple of hours the gypsum solidified and could then be walked upon in safety. Detroit Cornice, plaintiff's employer, took over at this stage and completed the operation by finishing with gravel, hot asphalt, and roofing paper.

The day of the accident was plaintiff Klovski's first day on this particular job, though he had done roofing work before. On the morning in question he rode to the site of the work with fellow workers. Their employer's ladders and kettles had been set up at the north end of the building, where their work was to begin, but, not having been there before, they came to the south end of the construction, parked there, and walked through the building. As one of them put it "Then we walked north through this long building looking for the roofing outfit; see, it had been raining and it was awful muddy on the

side so naturally you are going to take the best
way. through, the best way to walk, so we walked
through this cement floor going north, looking for
exactly where they were working, see." As the
group approached the far end they saw a ladder
going up to the roof. Without instruction from
anyone, indeed, without reporting for work and
directions to anyone in authority, some of them (in-
cluding plaintiff) climbed the ladder. One of the
plaintiff's companions noticed that the fiberglass
"gave" as he stepped on it and he put his weight,
rather, on a T-iron. Plaintiff, however, placed his
thermos bottle on the fiberglass, stepped off the
ladder onto the fiberglass, and fell through to the
floor below.

Action was brought against the general contrac-
tor, Darin & Armstrong, and the other roofing sub-
contractor, Martin Fireproofing. After trial, a mo-
tion for directed verdict made by Martin at the
close of plaintiff's case, upon which decision had
been reserved, was renewed and granted.* The case
against Darin & Armstrong went to the jury and
a verdict was returned for plaintiff. This, however,
was set aside by the trial court because of error
in instructions, and a new trial granted. The appeal
before us is from the denial of plaintiff's motion
for a new trial against Martin, and from the verdict
directed in its favor.

As Martin, the appellee, was neither plaintiff's
employer, nor the general contractor, but rather a
co-subcontractor, plaintiff rests his case upon the
theory that he was an "invitee or licensee at the
time and place of his injury." It is undisputed that
Martin owned the ladder by which plaintiff gained
access to the roof. In addition it is argued that
"the area from which plaintiff fell was uncovered

---

\* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1959 Cum
Supp § 27.1461 *et seq.*).—REPORTER.

fiberboard, constructed and under the control of the
appellee," that certain others had used this ladder
to gain access to the roof, and that there was no
other way to get to the roof.

The difficulty with plaintiff's case lies in the facts.
Before we can have one legally in the position of
invitee or licensee we must have an invitation, or
a license. Here is where plaintiff's case collapses.
The plaintiff simply saw a ladder, climbed it, and
thereby gained access to a part of the roof not yet
prepared for the operations of his employer, from
which he, unfortunately, fell. Was the ladder an
invitation to the plaintiff to climb? There was no
express invitation to so use, and as for implied invi-
tation, the ladder's mere presence in the area was
not such. Detroit Cornice, plaintiff's employer, had
its own ladders for reaching its work and its own
equipment. But, plaintiff urges, others had used
the ladder. The others disclosed by the record are
a government inspector and Darin & Armstrong's
general superintendent, but invitation to them is not
invitation to the plaintiff, or, in fact, the employees
of Detroit Cornice as a class. Moreover it is clear
that plaintiff did not rely on the user of the govern-
ment inspector or the general superintendent as
constituting invitation or license, indeed, that it was
not even known to him. On this phase of the case
the trial judge held as follows:

"Now, in the absence of any evidence of an agree-
ment between Martin Fireproofing and Detroit
Cornice, either express or implied, for the mutual
use of the ladder and in the absence of any evidence
that Martin Fireproofing knew or should have known
the plaintiff or his fellow employees or any employee
of any other subcontractor had used or reasonably
could be expected to use Martin Fireproofing's lad-
der, I find there is no basis upon which to conclude
that Martin Fireproofing owed any duty to the

plaintiff, either as an invitee, a licensee or as a trespasser."

And, in the trial court's opinion denying plaintiff's motion for new trial against Martin, as follows:

"If possible liability is to be imposed upon Martin Fireproofing because its ladder was used, by invitation or otherwise, express or implied, by plaintiff to gain access to the roof, there should have been, but there was not, some evidence from which the jury could find that defendant knew or should have known that plaintiff or others like plaintiff had so used its ladder, might so use it, or were so using it. The only evidence of the use of such ladders owned by Martin Fireproofing by others than its own employees was that the general contractor's foreman and a government inspector had done so, there being no evidence that defendant Martin Fireproofing even knew about that."

The cases upon which appellant relies, *Nezworski* v. *Mazanec,* 301 Mich 43; *Judis* v. *Borg-Warner Corp.,* 339 Mich 313, and *Munson* v. *Vane-Stecker Co.,* 347 Mich 377, as well as *Florez* v. *Groom Development Co., Inc.,* 53 Cal 2d 347 (1 Cal Rptr 840, 348 P2d 200), are all distinguishable on their facts. None, in particular, involves the absence of invitation, express or implied, found here. Nor do we have here the problem presented from express permission granted one subcontractor to use the equipment of another. See *Arthur* v. *Standard Engineering Co.,* 89 App DC 399 (193 F2d 903, 32 ALR2d 408), certiorari denied 343 US 964 (72 S Ct 1057, 96 L ed 1361).

Appellant urges also that defendant breached "one or both of its duties to plaintiff, that is, (1) its duty to make the premises safe, or (2) its duty to warn of a known dangerous condition." The plaintiff's difficulty is, again, with the facts. There was no duty upon defendant Martin, one of the roofing sub-

contractors, to make the premises safe for all who might work there, if, indeed, this were possible of accomplishment in a building under construction. Plaintiff, in fact, was not injured while on defendant Martin's work, using its equipment (there was no defect in the ladder), nor was he injured in an area turned over to his own employer for the performance of its operations but left in an unsafe condition through Martin's negligence. The danger, moreover, in working upon the roof of premises under construction is obvious to all who will look. As we observed in an earlier case,* the doctrine of the safe place cannot be applied as controlling where the facts before the court disclose construction work which, by its very nature, involves unusual risks in a progressively changing situation. We find no error in the case.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

SOURIS, J., did not sit.

---

* *Porth* v. *Cadillac Motor Car Co.*, 198 Mich 501, 512.