JOHNSON v A & M CUSTOM BUILT
HOMES OF WEST BLOOMFIELD, PC

Docket No. 246132. Submitted April 14, 2004, at Detroit. Decided May 4, 2004, at 9:20 A.M.

Michael Johnson, conservator of the estate of Daniel Johnson, an incapacitated person, brought an action in the Oakland Circuit Court against A & M Custom Built Homes of West Bloomfield, LPC, Paul Robert Olewnick Builders, Inc., and others, seeking damages for injuries sustained by Daniel Johnson when he fell from a roof while delivering shingles at a construction site. Daniel was employed by a subcontractor and slid off the roof after a toe board installed by Olewnick, another subcontractor, dislodged and failed to stop him. The trial court, Colleen A. O'Brien, J., granted summary disposition in favor of Olewnick on the basis that, as a subcontractor, it was not responsible for the safety of the employees of other subcontractors. The plaintiff appealed.

The Court of Appeals *held*:

Even if Olewnick had no direct duty to take proactive measures to make an otherwise unsafe work place safe, and therefore no duty to install toe boards to prevent Daniel from falling, the common law provides that where a subcontractor actually performs an act, it has the duty to perform the act in a nonnegligent manner. The plaintiff may raise a legitimate claim of active negligence by showing that Olewnick negligently performed the act of installing the toe boards and that its negligent performance was likely to result in harm. It is reasonable that the existence of the toe boards as a safety device might cause workers to forgo other safety devices in reliance on the ones in place. The use of the toe boards by others was foreseeable and the improper affixing of the toe boards created a foreseeable risk of harm to others. Olewnick owed a duty to those who used the toes boards.

Reversed and remanded.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett*), and *Levine, Benjamin, Tushman, Bratt, Jerris & Stein, P.C.* (by *Martin E. Stein*), for the plaintiff.

*Ogne, Alberts & Stuart, P.C.* (by *Michael A. Ross* and *Jeffrey Bullard*), for Paul Robert Olewnick Builders, Inc.

Before: COOPER, P.J., and GRIFFIN and BORRELLO, JJ.

BORRELLO, J. Plaintiff Michael Johnson, conservator of the estate of Daniel Johnson, an incapacitated person, appeals by right from the trial court's order granting summary disposition to defendant Paul Robert Olewnick Builders, Inc., under MCR 2.116(C)(10). Daniel Johnson was permanently incapacitated after falling from a roof on a construction job. Daniel, an employee of subcontractor Wimsatt Building Materials, was delivering shingles to the roof of the home when he slid off the roof after a toe board installed by another subcontractor, Olewnick, dislodged and failed to stop him. Because we find that defendant, when it installed the toe boards, owed Daniel a common-law duty to install them in a nonnegligent manner, we reverse the trial court's grant of summary disposition and remand the matter to the trial court.

Defendant moved for summary disposition on the basis that, as a subcontractor, it owed Daniel no duty to keep the premises safe for another subcontractor's employees, citing *Funk v Gen Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), overruled in part on other grounds, *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29, 70-71; 323 NW2d 270 (1982). Plaintiff responded that this case was distinguishable from *Funk* because plaintiff was alleging that Olewnick was actively negligent, and in active negligence cases, a subcontractor can be liable for resulting injuries to other employees. The trial court agreed with Olewnick and granted its motion for summary disposition under MCR 2.116(C)(10), stating:

The issue of whether a defendant owes a duty to a plaintiff to avoid negligent conduct in a certain circumstance is a question of law for the court to determine. *Hughes v PMG Bldg, Inc.*, 227 Mich. App 1, 5 [574 NW2d 691] (199[7]). "In determining whether a duty exists, courts examine a wide variety of factors, including the relationship of the parties and the foreseeability and nature of the risk." *Hughes, supra* [citing *Schultz v Consumers Power Co*, 443 Mich 445, 450; 506 NW2d 175 (1993)]. Here, Defendant Olewnick did not hire or supervise Daniel Johnson and his employer, did not have coordinating and job safety responsibilities of a general contractor, and did not own the land. It is the immediate employer of a construction worker who is generally responsible for job safety. *Hughes, supra* at 12.

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). On review, we " 'must consider the available pleadings, affidavits, depositions, and other documentary evidence in a light most favorable to the nonmoving party and determine whether the moving party was entitled to judgment as a matter of law.' " *Michigan Ed Employees Mut Ins Co v Turow*, 242 Mich App 112, 114-115; 617 NW2d 725 (2000), quoting *Unisys Corp v Comm'r of Ins*, 236 Mich App 686, 689; 601 NW2d 155 (1999).

Defendant correctly asserts that the general rule of law in construction site injury cases is that only the injured person's immediate employer—and not another subcontractor—is responsible for job safety. *Funk, supra* at 102. In some instances, though, a general contractor may be held liable to an injured party. *Hughes, supra* at 6. A general contractor can be liable under the "common work area exception," if the following elements are established: "(1) a general contractor with supervisory and coordinating authority over the job site, (2) a common work area shared by the employees of several subcontractors, and (3) a readily observable,

avoidable danger in that work area (4) that creates a high risk to a significant number of workers." *Id.*, citing *Groncki v Detroit Edison Co*, 453 Mich 644, 662; 557 NW2d 289 (1996). Our Supreme Court in *Funk* delineated that the exception does not extend to subcontractors. *Funk, supra* at 104 n 6, citing *Klovski v Martin Fireproofing Corp*, 363 Mich 1; 108 NW2d 887 (1961).

Nonetheless, nothing in our state's jurisprudence absolves a subcontractor—or anyone on a construction job—of liability under the common-law theory of active negligence. In *Clark v Dalman*, 379 Mich 251; 150 NW2d 755 (1967), our Supreme Court noted that one person's duty to another may arise "by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Id.* at 261. This rule, the Court explained, was embedded in "the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another." *Id.*, citing *Pinnix v Toomey*, 242 NC 358, 362; 87 SE2d 893 (1955).

Nothing in our subsequent law, including *Funk* and *Hughes*, the latter discussed hereafter, has abrogated that common-law duty. *Funk* prohibited the establishment of a general rule that a mere premises owner or a subcontractor had to make the premises safe for another subcontractor. *Funk, supra* at 104 and n 6. Discussing the rationale behind preventing subcontractor liability, the Court recognized that a mere premises owner or subcontractor was not in the best position—either professionally or financially—to install or oversee safety measures. The Court went on to state that

the property owner should not have to necessarily bear the cost of making a work place safe. *Id.* at 102-105.

But the distinction lies in the duty required. Even if defendant had no direct duty to take proactive measures to make an otherwise unsafe work place safe, and therefore no duty to install toe boards to prevent Daniel from falling,[1] defendant's common-law duty remained intact: "[a]s between two independent contractors who work on the same premises, either at the same time or one following the other, each owes to the employees of the other the same duty of exercising ordinary care as they owe to the public generally." 65A CJS, Negligence, § 534, p 291. Thus, where a subcontractor actually performs an act, it has the duty to perform the act in a nonnegligent manner.

Defendant also claims that because plaintiff did not specifically plead "active negligence," the claim is precluded. In his complaint, plaintiff alleged, among other things, that defendant failed to ensure that toe boards were properly fastened to the roof. Plaintiff did not direct any one allegation to any specific defendant, but grouped the allegations together with regard to all defendants. Generally, a complaint must contain a " 'statement of the facts' and the 'specific allegations necessary reasonably to inform the adverse party of the nature of the claims' against it." *Nationsbanc Mortgage Corp of Georgia v Luptak*, 243 Mich App 560, 566; 625 NW2d 385 (2000), quoting MCR 2.111(B). We hold that by putting forth the fact that defendant incorrectly installed the toe boards and by additionally alleging that defendant failed to ensure that the toe boards were properly installed, plaintiff reasonably informed defendant of the nature of the claim against it. See, generally,

---

[1] Absent a contract provision to the contrary, of course, but none has been shown.

*Iron Co v Sundberg, Carolson & Assoc, Inc,* 222 Mich App 120, 124; 564 NW2d 78 (1997).

Next, defendant relies on *Hughes* in disclaiming liability. In *Hughes,* the plaintiff, a roofing subcontractor, was injured when he stepped onto a porch overhang that another subcontractor was in the process of erecting. *Hughes, supra* at 3. The latter subcontractor had not finished erecting the overhang and had not installed cement footings or support posts. *Id.* Thus, the overhang was tenuously attached to the roof with nails only. *Id.* When the plaintiff stepped onto the overhang to shingle it, it tore from the roof and collapsed. *Id.*

This Court addressed the defendant subcontractor's liability in the last paragraph of the opinion. *Id.* at 12-13. Rejecting the plaintiff's argument that *Funk's* common work area exception applied to another subcontractor, this Court observed:

> Plaintiff was working on the construction site as an independent contractor. He was not invited onto the site by State Carpentry and did not use State Carpentry's equipment. As such, State Carpentry had no duty to make the premises safe for plaintiff or to warn plaintiff of a known dangerous condition. See *Klovski* [*supra* at 5]. [*Id.*]

*Hughes* is distinguishable in two respects. First, this Court did not analyze whether the defendant undertook an action that it then performed negligently to the plaintiff's detriment, but instead soundly refused to extend the common work area exception to a subcontractor while reaffirming the principle that one subcontractor has no duty to create a safe work place for another.

Second, even if an active negligence analysis had been used, the facts at hand differ. In *Hughes,* the defendant was in the process of completing the roof but had not finished it. Moreover, other than building the

roof, the defendant in *Hughes* did not take any measures to accommodate other workers by installing any safety devices. Finally, nothing in *Hughes* suggests that the defendant performed its job negligently. Here, defendant performed the task of nailing in the toe boards, but the job was allegedly completed in a negligent manner. For these reasons, defendant's attempt to analogize *Hughes* must fail.

Defendant is correct that plaintiff did not plead or attempt to prove that defendant had a contractual duty to install the toe boards. Nonetheless, we do not find those proofs necessary. Despite the absence of a contractual provision, plaintiff can raise a legitimate claim of active negligence by showing that defendant negligently performed an act and that its negligent performance was likely to result in harm.

Finally, we must address the legal issue of the nature of the duty owed to Daniel. The question of duty has been explained by our Supreme Court as follows: "The question whether a duty exists depends in part on foreseeability: whether it was foreseeable that a defendant's conduct may create a risk of harm to another person and whether the result of that conduct and intervening causes was foreseeable." *Schultz, supra* at 464, citing *Buczkowski v McKay*, 441 Mich 96, 101; 490 NW2d 330 (1992), and *McMillan v State Hwy Comm*, 426 Mich 46, 61-62; 393 NW2d 332 (1986). Here, it is reasonable that the existence of one safety device—the toe boards—could cause a risk of harm in that a person may choose to forgo other safety devices in reliance on the ones in place. So by not properly affixing the toe boards to trusses, defendant's employees' actions created a risk of harm. Finding that the use of the toe boards by others was foreseeable, we find that defen-

dant, by affixing the toe boards in an alleged negligent manner, owed a duty to those who used the toe boards.

Reversed and remanded. We do not retain jurisdiction.