# STATE OF MICHIGAN

# COURT OF APPEALS

EDDIE L JACOBS and SONYA R JACOBS,

Plaintiffs-Appellants,

v

WALBRIDGE ALDINGER COMPANY,
UNNAMED CONTRACTORS, and UNNAMED
SUBCONTRACTORS,

Defendants-Appellees,

and

FORD MOTOR COMPANY,

Miscellaneous Intervenor.

UNPUBLISHED
December 13, 2016

No. 328589
Macomb Circuit Court
LC No. 2014-001639-NI

Before: JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Plaintiff[1] appeals by right the trial court's order granting defendant Walbridge Aldinger Company's (Walbridge) motion for summary disposition in this negligence action. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a workplace accident that occurred at Ford Motor Company's (FMC) Sterling Axle Plant.[2] At the time, FMC was engaged in a demolition project involving

---

[1] Plaintiff Sonya R. Jacobs, the wife of plaintiff Eddie L. Jacobs, also appeals the trial court's order by right. Because her loss of consortium claim is derivative and she was not involved in the events from which this matter arose, we will use the singular term "plaintiff" throughout this opinion to refer to Mr. Jacobs.

[2] Although Ford Motor Company was designated as an intervenor in the trial court's register of actions, it did not actually intervene in this matter. Instead, it appeared as a nonparty, for the sole

-1-

the removal of old machinery and lighting from a portion of its facility so that it could be replaced with new equipment. While attempting to remove an elevated raceway,[3] plaintiff, an industrial electrician employed by FMC, fell from a ladder and sustained a traumatic brain injury, as well as serious injuries to his back, neck, and right shoulder. Plaintiff suffered post-traumatic stress disorder following the accident. According to plaintiff, he was working on a large machine with two other FMC electricians, although his coworkers were each working independently on different sides of the machine at the time he fell. Describing his fall, plaintiff said, "I was getting ready to come down the ladder and all of a sudden the ladder was swept from under me. I did not see the ductwork, I did not see it hit me, I really don't know what happened."

The nature and scope of Walbridge's role with respect to the project are unclear. Walbridge was hired to provide "construction services," which included the services of a construction manager and a safety engineer. Although the purchase order incorporated by reference FMC's global specifications, neither the purchase order nor the global specifications identified the role of a "construction manager" or a "safety engineer." The deposition testimony of several FMC and Walbridge employees revealed that there was a significant safety component to Walbridge's contractual duties.

There were a number of safety policies and procedures in place for the project, including the required use of pre-task analyses (PTAs). A PTA is a risk assessment tool that is used to plan the work that is typically required to be performed for high risk, non-routine activities, including demolition work, work performed at heights, and removal of existing equipment or building infrastructure. The person preparing the PTA is required to determine the work sequence of the task being analyzed, document each step of the sequence, identify the hazards associated with each step, and document the appropriate protective measures or equipment that should be used to minimize or eliminate the anticipated hazards. According to plaintiff, Walbridge was involved in creating and auditing the project's PTAs. Plaintiff argued at summary disposition that Walbridge was negligent in performing that task because the PTA that was applicable to plaintiff's demolition work failed to adequately notify him that he should work directly with partners when performing demolition.

Plaintiff filed a single-count complaint alleging that Walbridge was the "general contractor or the project contractor" for the job site. As such, Walbridge was "in charge of safety and demolition at the job site." In his complaint, plaintiff articulated Walbridge's alleged duty and negligence as follows:

> 19.    At all times relevant, Defendant Walbridge Aldinger Company, as General Contractor or Project Contractor, owed a duty to Mr. Jacobs and to all other individuals working at the jobsite, to supervise the jobsite activities being

purpose of obtaining a protective order with respect to a number of confidential internal documents it produced in connection with this case.

[3] A raceway is a square piece of ductwork that encloses wires running between the overhead power source and the various equipment or machines.

undertaken by all contractors and subcontractors,[4] to ensure that they observed reasonable safety precautions when performing their activities, so as not to subject other tradesmen to unreasonable risk of injury and harm.

20. Notwithstanding its duties in the premises, Defendant Walbridge Aldinger Company breached the same by:

    a.    failing to properly oversee its employees, agents, contractors and subcontractors;

    b.    failing to properly oversee safety for anyone at the jobsite at any time where Walbridge Aldinger controlled, in whole or in part, that site;

    b. [sic] failing to implement reasonable safety measures to prevent the raceway and conduit from causing aggravated injuries to electricians, including Mr. Jacobs;

    c. [sic] otherwise failing to maintain the jobsite in a reasonably safe condition, and to exercise due care to prevent and to obviate the readily observable, avoidable dangerous conditions which Defendant Walbridge Aldinger Company knew or should have known, posed a high degree of risk to Mr. Jacobs and other electricians, in the exercise of its reasonably supervisory duties in the premises.

After the close of discovery, Walbridge filed a motion for summary disposition pursuant to MCR 2.116(C)(10). For purposes of its motion, Walbridge did not dispute that it was the general contractor for the project or that it controlled plaintiff's work—although it also noted that both concessions were contradicted by the evidence gleaned during discovery. Nonetheless, Walbridge argued that, even if it had been the general contractor for the project, it was still entitled to judgment as a matter of law because, ordinarily, "a general contractor does not have a duty as to the safety of tradesmen and is not liable for any injuries they may sustain on a construction project." Thus, Walbridge argued, the only way for plaintiff to hold it liable for his injuries was by demonstrating that the "common work area doctrine" applied to his claim, which Walbridge contended plaintiff was unable to do.

In his response to Walbridge's motion, plaintiff observed that Walbridge's entire argument was premised on the inapplicability of the common work area doctrine. Plaintiff agreed that his claim did not fall within the scope of the doctrine because he was not attempting

---

[4] The parties agree that there were no unnamed contractors or subcontractors working on the project during the relevant time frame. However, the unnamed contractor and subcontractor defendants were never dismissed from the lower court proceedings and were identified as appellees in the claim of appeal filed in this matter.

-3-

to impose liability on Walbridge based on the negligence of third-party subcontractors. Instead, plaintiff asserted that Walbridge was directly liable as a result of its own active negligence. Specifically, plaintiff argued that the FMC-Walbridge contract required Walbridge to review the PTAs to ensure that they documented anticipated hazards and adequate safeguarding measures. Thus, by participating and contributing to the creation of the PTAs, Walbridge assumed a common-law duty to perform that undertaking with reasonable care. Plaintiff argued that Walbridge was actively negligent because it failed to amend the PTA at issue to notify tradesmen, like plaintiff, that they were required to work directly with partners when performing demolition work.

In a written opinion and order, the trial court granted Walbridge's summary disposition motion. After setting forth the principles of the common work area doctrine and quoting several paragraphs from plaintiff's complaint, the opinion and order read as follows:

> Plaintiff's complaint for negligence clearly sets forth a claim based upon the common work area doctrine. Plaintiff alleges a duty of care based upon defendant's relationship to the project as the general contractor. Since plaintiff does not contest defendant's motion in relation to the common work area doctrine, and plaintiff's complaint does not allege a theory of liability other than the common work area doctrine, summary disposition is appropriate. Plaintiff has not filed a motion to file an amended complaint, and has failed to provide the Court with argument or facts to justify leave to amend his complaint. *Plaintiff's argument that defendant committed negligence by failing to perform contractual tasks is insufficient to establish a genuine issue of material fact on his claim as pled.* . . .

> Based upon the reasons set forth above, defendant's motion for summary disposition is GRANTED. In compliance with MCR 2.602(A)(3), the Court states this *Opinion and Order* resolves the last claim and closes the case. [First emphasis added.]

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo rulings on summary disposition motions. *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010), quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009).

## III. ANALYSIS

On appeal, plaintiff argues that the trial court erred because it granted Walbridge's motion based on its conclusion that Walbridge was as a matter of law not liable to plaintiff under the common work area doctrine, despite the fact that plaintiff characterized his claim against Walbridge as one for active negligence and not as one arising out of the negligence of a third-party. We disagree.

"In Michigan the primary function of a pleading 'is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position.'" *Thomai v MIBA Hydramechanica Corp*, 303 Mich App 196, 212; 842 NW2d 417 (2013), rev'd on other grounds by 496 Mich 854 (2014), quoting *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). Therefore, a complaint need only contain a "statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" *Kincaid v Cardwell*, 300 Mich App 513, 529; 834 NW2d 122 (2013), quoting MCR 2.111(B)(1) (alteration in original).

In the context of claims arising from injuries on a construction jobsite, the general rule is that only a construction worker's immediate employer is responsible for the worker's safety, and a general contractor will not typically be held liable for an injury that is caused by the negligence of its subcontractor. *Latham v Barton Malow Co*, 480 Mich 105, 112; 746 NW2d 868 (2008). However, the "common work area doctrine" sets forth an exception to this general rule and imposes liability on a general contractor for construction related injuries if the plaintiff can demonstrate that "(1) the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workers (4) in a common work area." *Id*. at 108-109. As our Supreme Court observed in *Latham*, the common work area doctrine was adopted to "discourage those in control of the worksite from ignoring or being careless about unsafe working conditions . . . ." *Id*. at 112. The common work area doctrine addresses vicarious liability; a general contractor also may be held liable for an injury that is directly caused by its own active negligence. *Johnson v A & M Custom Built Homes of West Bloomfield*, 261 Mich App 719, 722; 683 NW2d 229 (2004). Thus, when a general contractor engages in a specific undertaking on a construction site, it is obligated to exercise due care in performing that undertaking so that it does not "unreasonably endanger the person or property of others." *Id*.

Plaintiff conceded before the trial court, and concedes on appeal, that the common work area doctrine is inapplicable to his claim against Walbridge. Given plaintiff's concession regarding the inapplicability of the common work area doctrine to this case, it follows that the trial court properly granted summary disposition to Walbridge if, as the trial court held, that was the only theory of liability alleged in plaintiff's complaint. In determining the nature of the claim presented by a complaint, Michigan courts are not bound by procedural labels and, instead, determine the gravamen of an action by reading the claim as a whole. *David v Sternberg*, 272 Mich App 377, 381; 726 NW2d 89 (2006) (citations omitted). Plaintiff contends that the allegations in his complaint, when read as a whole, were sufficient to give Walbridge notice that it was required to defend itself against a claim of active negligence. We disagree.

In paragraph 19 of plaintiff's complaint, plaintiff articulated Walbridge's alleged duty to supervise the jobsite activities by reference to its role as general contractor or project contractor. In other words, plaintiff asserted that Walbridge's duty arose from its broad supervisory role for the project—the very duty that is at issue in a common work area claim. *Latham*, 480 Mich at 112. By contrast, had plaintiff pleaded a claim for active negligence, Walbridge's duty would have arisen from the specific tasks that it performed on the project. *Johnson*, 261 Mich App at 722. Plaintiff's complaint alleged no such specific tasks or any resulting duty.

Likewise, paragraph 20 of plaintiff's complaint articulates how Walbridge allegedly breached the duties that had been alleged in paragraph 19 (which, again, related solely to supervision in the role of a general contractor or project contractor), and thus also derives from the common work area doctrine. Under the doctrine, a general contractor breaches its duty of care by failing to "assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." *Id*. Using similar language, plaintiff alleged in his complaint that Walbridge was negligent because it had failed to exercise its oversight authority, implement safety measures, or take other actions that would "prevent and obviate the readily observable, avoidable dangerous conditions which Defendant Walbridge Aldinger Company knew or should have known, posed a high degree of risk to Mr. Jacobs and other electricians, in the exercise of its reasonable supervisory duties in the premises." Again, plaintiff's allegation of negligence related to Walbridge's alleged failure to exercise the oversight and supervisory authority of a general contractor, rather than its negligent performance of any tasks that it had undertaken to perform on the construction site.

By way of comparison, this Court in *Johnson* rejected a contractor defendant's argument that an injured plaintiff's common-law negligence claim against the defendant was precluded as a result of his failure to plead "active negligence" in his complaint. *Johnson*, 261 Mich App at 723. The Court reasoned that the plaintiff's complaint satisfied Michigan's notice-pleading requirements because it alleged that the plaintiff was injured as a result of falling when the toeboards that defendant had negligently installed came loose. *Id*. Thus, because the plaintiff had alleged specific actions that he believed the defendant had negligently performed, rather than relying solely on a generalized duty imposed under the common work area doctrine, the complaint was sufficient to assert an active negligence claim. *Id*. By contrast, plaintiff's complaint in this case failed to identify any specific tasks that Walbridge performed in a negligent manner in violation of its common-law duty of care, instead relying on generalized allegations that would have put defendant on notice that plaintiff's claim was one for vicarious liability only under the common work area doctrine.

Because we agree with the trial court's conclusion that plaintiff's complaint alleged only that Walbridge was liable for his injuries under a common work area theory, and because plaintiff conceded at summary disposition that the theory was inapplicable to a determination of Walbridge's liability, we conclude that the trial court did not err by granting Walbridge's summary disposition motion on the basis that the doctrine was inapplicable to plaintiff's claim.

Plaintiff also argues that, should this Court determine that he did not properly plead a claim of active negligence against Walbridge, he should be allowed to amend his complaint to allege a claim for active negligence against Walbridge. Plaintiff did not request leave to amend

his complaint in the trial court. An issue is preserved for appellate review if it is "raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 Mich App 84 (2005). Thus, because plaintiff did not raise this issue in the lower court, it is unpreserved for appellate review. This Court generally reviews for an abuse of discretion a trial court's decision whether to permit a party to amend its pleadings. *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008). However, because this issue is unpreserved, our review is limited to plain error. *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006).

Generally, leave to amend should be freely granted, and a trial court should only deny such leave "for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Kostin*, 278 Mich App at 51-52. However, this general rule in favor of granting leave to amend does not address whether a trial court has an affirmative obligation, in the absence of a motion requesting an opportunity to amend, to offer a party such relief.

In *Kloian*, 272 Mich App at 241-242, the plaintiff presented an argument identical to that pursued by plaintiff in the instant case, i.e., that a trial court erred by denying him an opportunity to amend his complaint after granting summary disposition in the defendant's favor. Addressing the unpreserved issue, this Court noted that, under MCR 2.116(I)(5), when a trial court determines that summary disposition is appropriate under MCR 2.116(C)(8)-(10), it "shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." *Kloian*, 272 Mich App at 242, quoting MCR 2.116(I)(5). Because it was explicitly incorporated by reference, the *Kloian* Court also considered the rule set forth in MCR 2.118, which provides, in pertinent part, that "a party may amend a pleading only by leave of the court or by written consent of the adverse party." *Kloian*, 272 Mich App at 242, quoting MCR 2.118(A)(2). Reading the two rules together, this Court concluded that "[b]ecause plaintiff did not seek leave of the court or obtain defendants' written consent to amend his complaint as required by MCR 2.118(A)(2), MCR 2.116(I)(5) did not require the court to sua sponte offer plaintiff an opportunity to amend. Therefore, no plain error occurred." *Kloian*, 272 Mich App at 242.

We find the reasoning of *Kloain* to be applicable here. Because plaintiff did not seek leave to amend in the trial court, or obtain consent for such amendment from Walbridge, the trial court did not commit plain error by failing to sua sponte offer plaintiff an opportunity to amend his complaint before dismissing the case. Further, under the circumstances presented, a request for leave to amend, had it been made, may properly have been denied based on undue delay, bad faith or dilatory motive. *In re Kostin*, 278 Mich App at 51-52. Plaintiff engaged in discovery for well over a year, during which time he had ample opportunity to discover that the facts gleaned from discovery did not support the theory alleged in his complaint. Assuming that plaintiff truly believed that he had pleaded a claim of active negligence, as he argued in the trial court and has argued on appeal, the filing of Walbridge's motion for summary disposition, which was devoted solely to arguing against the applicability of the common work area doctrine, should have given plaintiff a strong reason to review his complaint for ambiguity. Walbridge's counsel even referenced plaintiff's failure to amend his complaint during oral argument at the motion hearing. Nonetheless, plaintiff never sought leave to amend his complaint to clarify the nature of his claim. The trial court took the matter under advisement and did not issue its opinion until nearly

four months had passed from the time that Walbridge first raised the issue in its motion for summary disposition. Clearly, plaintiff had ample opportunity to make a timely request to amend his complaint and failed to do so. Thus, we decline to remand plaintiff's case to allow for the amendment of his complaint.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra