*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD LARSEN,

        Plaintiff-Appellant,

v

VISION QUEST CONSULTINGS, INC.,

        Defendant-Appellee,

and

COMPLETE ENCLOSURES, INC.,

        Defendant.

UNPUBLISHED
June 9, 2022

No. 353440
Eaton Circuit Court
LC No. 19-000059-NO

RONALD LARSEN,

        Plaintiff-Appellee,

v

COMPLETE ENCLOSURES, INC.,

        Defendant-Appellant,

and

VISION QUEST CONSULTINGS, INC.,

        Defendant-Appellee.

No. 354028
Eaton Circuit Court
LC No. 19-000059-NO

Before: RICK, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

-1-

Plaintiff, Ronald Larsen, filed this negligence action against defendant Vision Quest Consultings, Inc., the general contractor on a construction project, and defendant Complete Enclosures, Inc., one of the subcontractors on the project. The trial court granted summary disposition in favor of Vision Quest under MCR 2.116(C)(10), but denied Complete Enclosures' motion for summary disposition under that same subrule. This Court granted plaintiff leave to appeal the order granting Vision Quest's motion for summary disposition in Docket No. 353440,[1] granted Complete Enclosure leave to appeal the order denying its motion for summary disposition in Docket No. 354028,[2] and consolidated both appeals on its own motion.[3] For the reasons set forth in this opinion, we affirm the trial court's rulings in both appeals.

## I. BASIC FACTS

Vision Quest contracted with BQW Properties to manage its construction site, and BQW's employee, Brian Kemppainen, testified that he was on-site most days "to enforce the Vision Quest Safety Program." Vision Quest also contracted with A4H Construction to install barricades at entry points. This consisted of placing plywood boards in front of entrances and securing them in place with screws. According to Kemppainen, these barricades were in fact installed.

The day before plaintiff's injury, employees from Complete Enclosures unscrewed and removed one of the plywood boards to do work on the outside of the building. Complete Enclosures' foreman told Kemppainen that, after Complete Enclosures' work was done, he had secured the plywood barricade back in place, which Kemppainen understood to mean that the barricade had been refastened with screws. While Complete Enclosures' employees put the plywood board back, they unfortunately did not secure it in place with screws.

The next day, plaintiff arrived at the construction site to deliver drywall. Kemppainen testified that he took measures to ensure that delivery people had safe access points through which to make deliveries, and that he would provide codes for entry to subcontractors who were then responsible for giving those codes to whomever was making the delivery. However, Kemppainen was not informed that plaintiff was making a delivery, which had been scheduled by A4H. As a result, plaintiff did not have the access code that he needed to get into the building. He therefore went around the building trying to find a way in, eventually finding the plywood barrier that Complete Enclosures' employees had failed to secure with screws. Plaintiff removed the plywood and went through the doorway. On the other side of the doorway was an opening in the floor that dropped down to the basement, and plaintiff fell through that opening, injuring himself.

Plaintiff filed this action for negligence against Vision Quest. After Vision Quest filed a notice of nonparty fault against Complete Enclosures, plaintiff filed an amended complaint adding

---

[1] *Larsen v Complete Enclosures, Inc*, unpublished order of the Court of Appeals, issued October 9, 2020 (Docket No. 353440).

[2] *Larsen v Complete Enclosures, Inc*, unpublished order of the Court of Appeals, issued October 9, 2020 (Docket No. 354028).

[3] *Larsen v Complete Enclosures, Inc*, unpublished order of the Court of Appeals, issued October 9, 2020 (Docket No. 353440).

an additional claim against Complete Enclosures. Plaintiff alleged that Vision Quest breached its "duty to take reasonable steps within their supervisory and coordinating authority to guard against readily observable and avoidable dangers in a common work area." Plaintiff further alleged that Vision Quest breached its duty to ensure that other contractors and subcontractors working at the site were following proper safety precautions. With respect to Complete Enclosures, plaintiff alleged that it breached its duty of care, or created a new hazard, by removing the plywood barricade and failing to properly reattach it at the doorway where plaintiff entered the building.

Vision Quest and Complete Enclosures both moved for summary disposition under MCR 2.116(C)(10). The trial court granted Vision Quest's motion, but denied Complete Enclosures' motion. These appeals followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Vision Quest and Complete Enclosures both moved for summary disposition under MCR 2.116(C)(10). In reviewing a motion under this subrule, a court must view the substantively admissible evidence submitted by the parties and all legitimate inferences arising from that evidence "in the light most favorable to the nonmoving party." *Coblentz*, 475 Mich at 567-568. Summary disposition under this subrule is appropriate where the proffered evidence fails to establish a genuine issue on any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 568.

The applicability of a legal doctrine, such as the common-work-area doctrine, presents a question of law, which this Court reviews de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). Likewise, application of Michigan's wrongful-conduct rule presents a question of law reviewed de novo. See *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008).

## III. DOCKET NO. 353440

In Docket No. 353440, plaintiff argues that the trial court erred by granting Vision Quest's motion for summary disposition because he submitted sufficient evidence to establish a question of fact with respect to each element of the common-work-area doctrine. We disagree.

## A. GENERAL LAW

At common law, general contractors like Vision Quest generally could not be held liable for the negligence of independent contractors and their employees, but the Michigan Supreme Court created an exception to this rule in *Funk v Gen Motors Corp*, 392 Mich 91, 102; 220 NW2d 641 (1974), overruled in part on other grounds in *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29; 323 NW2d 270 (1982). See *Ormsby v Capital Welding, Inc*, 471 Mich 45, 48; 684 NW2d 320 (2004). Under this new exception, known as the "common work area doctrine," a general contractor can be held liable for a subcontractor's negligence if the plaintiff can establish that "(1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in

a common work area." *Id*. at 54. "[A] plaintiff's failure to satisfy any one of the four elements of the 'common work area doctrine' is fatal to [his or her] claim." *Id*. at 59.

## B. FIRST ELEMENT—REASONABLE STEPS

With respect to the first element—whether the defendant failed to take reasonable steps within its supervisory and coordinating authority to ensure workplace safety—no reasonable juror could conclude that Vision Quest failed to do so. Vision Quest contracted BQW to manage the construction site,[4] and BQW's employee, Kemppainen, was on-site most days "to enforce the Vision Quest Safety Program." With respect to the opening in the floor that plaintiff fell through—which was just inside a door leading from the outside into the building—Vision Quest took steps to ensure that no one had access to that area by installing a barricade on the doorway. After Complete Enclosures removed the barricade to do work on the outside of the building, Kemppainen checked back with Complete Enclosures' foreman to ensure that the barricade was reinstalled, and Complete Enclosures' foreman assured Kemppainen that the barricade had been put back. Plaintiff's injury only occurred after he took it upon himself to remove that barricade, which he admitted he knew was there to prevent him from accessing the area. On these facts, no reasonable juror could conclude that Vision Quest failed to take reasonable steps within its supervisory and coordinating authority to ensure workplace safety—Vision Quest had safety measures in place to guard against the danger that caused plaintiff's injury and took steps to ensure that those safety measures remained in place, but plaintiff removed those safety measures and was then injured.

Plaintiff argues that there is a question of fact whether the steps Vision Quest took were reasonable because Vision Quest allegedly violated 29 CFR 1926.501(b)(15), which provides:

> Except as provided in § 1926.500(a)(2) or in § 1926.501 (b)(1) through (b)(14), each employee on a walking/working surface 6 feet (1.8 m) or more above lower levels shall be protected from falling by a guardrail system, safety net system, or personal fall arrest system.

Assuming that the provision applies, it is not clear that Vision Quest violated it. Under 29 CFR 1926.500(b), "*Guardrail system* means a barrier erected to prevent employees from falling to lower levels." Clearly, the plywood barricade that Vision Quest had in place was to prevent employees from entering into the barricaded area and risk falling to lower levels. Therefore, it

---

[4] While Vision Quest's delegation of responsibility to BQW was not, standing alone, sufficient as a matter of law to show that Vision Quest took reasonable measures to protect against the danger, see, e.g., *Latham v Barton Malow Co*, 480 Mich 105, 123; 746 NW2d 868 (2008) (KELLY, J., dissenting) ("It is doubtful that, under *Funk*, a general contractor can entirely absolve itself of liability by shifting to its subcontractors all responsibility for implementing workplace safety and for providing safety equipment."), Vision Quest's hiring of BQW to ensure that its Safety Program was followed was but one reasonable step that Vision Quest took to ensure the safety of the premises.

seems that the plywood barricade would be considered a guardrail system for purposes of the cited regulation.[5]

## C. SECOND ELEMENT—READILY OBSERVABLE AND AVOIDABLE DANGER

Even assuming that plaintiff presented sufficient evidence to establish the first element of his claim under the common-work-area doctrine, he still needed to present evidence establishing a question of fact with respect to all three other elements for his claim to proceed. See *Ormsby*, 471 Mich at 59.

With respect to the second element—the "readily observable and avoidable danger" that the defendant needed to guard against—our Supreme Court's opinion in *Latham v Barton Malow Co*, 480 Mich 105; 746 NW2d 868 (2008), is instructive. In *Latham*, an employee was injured when he fell 17 feet while working on a mezzanine; the trial court denied the defendant's motion for summary disposition, and, as explained by the Michigan Supreme Court:

> The Court of Appeals affirmed. It agreed with the trial court that "plaintiff faced the danger of working on an elevated platform that did not have any permanent perimeter protection to protect him from falling while loading materials onto the mezzanine." It said that the trial court properly focused on the mezzanine's lack of perimeter protection, not plaintiff's failure to use personal fall protection, even though the Court acknowledged that such protection would have prevented plaintiff's injuries. The Court determined that a significant number of workers from other trades would be exposed to the same hazard of having to use the unprotected mezzanine opening when entering and leaving the lift and disagreed with defendant that the number of workers present at the specific time of the injury was relevant. The Court concluded that defendant had supervisory and controlling authority over the jobsite and that the mezzanine was a common work area. The Court held that the four elements of the common-work-area doctrine were met because a question of material fact existed regarding whether defendant took reasonable steps to guard against the danger. [*Latham*, 480 Mich at 110-111 (citations omitted).]

On appeal, our Supreme Court reversed because the trial court and the Court of Appeals had identified the wrong danger; it explained that "the danger at issue was not the height itself" but "*working at heights without fall-protection equipment.*" *Id*. at 113-114. The Court concluded that this error in identifying the danger led the lower courts to improperly analyze the plaintiff's claim under the common-work-area doctrine. *Id*. at 115.

Analogously, the danger at issue here was not the opening in the floor itself, but confronting the opening without proper safety measures in place.

---

[5] While this "guardrail system" did not meet the specifications for a "guardrail system" in 29 CFR 1926.502(b), such a failure means that Vision Quest would have violated *that* regulation; it would not mean that it failed to comply with 29 CFR 1926.501(b)(15), the regulation cited by plaintiff.

## D. THIRD ELEMENT—RISK TO A SIGNIFICANT NUMBER OF WORKERS

With this framing of the danger, for plaintiff to establish the third element—that the danger created a high degree of risk to a significant number of workers—he must present evidence that a significant number of workers confronted the opening through which plaintiff fell *without proper safety measures in place*. See *id*. at 114 (explaining that it is "the danger of *working at heights without fall-protection equipment . . .* to which a significant number of workers must be exposed in order for a claim to exist" under the common-work-area doctrine). If we use 29 CFR 1926.501(b)(15) as a baseline for what may constitute appropriate safety measures, it would include "a guardrail system, safety net system, or personal fall arrest system[6]." Plaintiff does not offer any evidence that another worker—let alone a "significant number" of other workers— confronted the opening through which plaintiff fell without proper safety measures in place, and, therefore, plaintiff has failed to present sufficient evidence establishing this element of his claim.[7]

Regardless, even if the danger at issue in this case was the opening in the floor itself, plaintiff has failed to submit sufficient evidence from which a reasonable person could conclude that a significant number of workers confronted that danger. Plaintiff was injured when he fell from the landing through the opening in the floor into the basement. While he presented evidence that others worked in the area, the evidence shows that those workers either worked outside (and did not go through the doorway onto the landing), in the basement, or on scaffolding[8] (and therefore were never at risk of falling from the landing).[9] Moreover, it is unclear that anyone used

---

[6] Pursuant to 29 CFR 1926.500(b), "*Personal fall arrest system* means a system used to arrest an employee in a fall from a working level. It consists of an anchorage, connectors, a body belt or body harness and may include a lanyard, deceleration device, lifeline, or suitable combinations of these."

[7] As will be explained later, plaintiff failed to present evidence tending to establish that any other workers confronted the opening in the floor through which plaintiff fell. However, assuming that other workers did confront the opening in the floor that plaintiff fell through, and assuming that they did so with no guardrail system or safety net in place, plaintiff still cannot establish the third element of his claim under the common-work-area doctrine because nothing in the record suggests that any workers confronted the opening in the floor without using a personal fall arrest system (such as a safety harness). While there is also no evidence that workers *did* use personal fall arrest systems, plaintiff had the burden to bring forth evidence establishing this element of his claim.

[8] That someone working on scaffolding is subject to a different danger than someone working on a landing next to a drop of 6 feet or more is exemplified by the fact that 29 CFR 1926.501(b)(15)— the regulation that plaintiff says applies to this case—by its terms does not apply to workers working on scaffolding. See 29 CFR 1926.501(b)(15) (stating that it does not apply to conditions listed in 29 CFR 1926.500(a)(2)); 29 CFR 1926.500(a)(2)(*i*) (explaining that scaffolding is addressed in a different subpart).

[9] Despite Kemppainen testifying that electrical workers could work "anywhere around the building," his later testimony that "there was no electrical workers working [on the landing] until

the door to reach the landing—thereby exposing themselves to the danger that caused plaintiff's injuries—before Complete Enclosures' employee's unscrewed the plywood barricade.[10] The evidence highlighted by plaintiff establishes, at best, that other workers worked in the area near where plaintiff was injured. Nothing about that evidence tends to establish that those workers worked on the landing where plaintiff fell and were thus exposed to the danger that caused plaintiff's injuries. Accordingly, plaintiff has failed to present sufficient evidence establishing a question of fact whether a "significant number" of workers were placed at risk by the danger that caused plaintiff's injuries.

### E. FOURTH ELEMENT—COMMON WORK AREA

For the final element—that the danger in this case was "in a common work area"—we agree with the trial court that plaintiff failed to present evidence creating a question of fact whether the danger that caused plaintiff's injury was in a common work area. The evidence shows that masons worked outside the door of the landing where plaintiff fell, but they did not go through the doorway when working. Thus, those workers were not working in the area that plaintiff fell. See *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 6-7; 574 NW2d 691 (1997) (concluding that plaintiff failed to present evidence establishing a question of fact whether the porch overhang where he was injured was a common work area despite presenting evidence that "other contractors performed work on the exterior of the house in the vicinity of the overhang," such as a subcontractor installing siding on the overhang). Others worked to install drywall and stairs in the basement beneath where plaintiff fell—not on the landing where plaintiff fell. Thus, these workers too were not working in the area that plaintiff fell. See *id*. at 6-7 (explaining that the plaintiff failed to present evidence establishing a question of fact whether the porch overhang where he was injured was a common work area because, while evidence established that workers worked under or around the overhang, there was "no evidence in the record that the employees of any other trade would work on top of the porch overhang"). Simply put, there is no evidence in the record that employees of other trades worked on the landing from which plaintiff fell—the evidence, as pointed out by the trial court, only supports that employees worked around that landing. Accordingly, like this Court in *Hughes*, we conclude that plaintiff failed to establish a question of fact whether he was injured while working in a common work area because he failed to proffer evidence showing that multiple subcontractors worked on the landing as encountered by plaintiff.

### IV. DOCKET NO. 354028

In Docket No. 354028, Complete Enclosures argues that the trial court erred by denying its motion for summary disposition because, as a subcontractor, Complete Enclosures could not be liable for plaintiff's fall, and because Complete Enclosures was otherwise entitled to summary disposition under the wrongful-conduct rule. We disagree with both arguments.

---

after the stairwell was built" established that electrical workers would not have been exposed to the risk of falling from the landing to the basement.

[10] Testimony established that workers that worked in the basement before plaintiff's fall used a staircase in the center of the building that was in place specifically to allow access to the basement.

## A. SUBCONTRACTOR LIABILITY

"Although a subcontractor has no duty under the common work area doctrine to make a work site safe for the employees of another subcontractor," it still has a common-law duty applicable to all contractors. *Ghaffari v Turner Constr Co (On Remand)*, 268 Mich App 460, 466; 708 NW2d 448 (2005). As explained by our Supreme Court in *Clark v Dalman*, 379 Mich 251, 262; 150 NW2d 755 (1967), that duty is "to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project, is well settled." See also *Johnson v A & M Custom Built Homes of W Bloomfield, LPC*, 261 Mich App 719, 722; 683 NW2d 229 (2004) (explaining that a subcontractor has a common-law duty to act in a manner that does not cause unreasonable danger to another).

Complete Enclosures argues that plaintiff fails to allege any active negligence, and that the only allegation against it is that it failed to reattach the plywood barricade, i.e., that it failed to act. In light of this, Complete Enclosures concludes, it was entitled to summary disposition "based on a lack of duty . . . ." See, e.g., *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988) (explaining that, in general, "there is no duty that obligates one person to aid or protect another"); *Johnson*, 261 Mich App at 722 (explaining that the common-law duty imposed on subcontractors is under a theory of "active negligence"). Contrary to Complete Enclosures' framing of the issue, the allegation against it is not simply that its employees came across the unsecured plywood barrier and failed to secure it. The allegation is that Complete Enclosures' employees *removed the plywood barricade* and then failed to re-secure it—the negligence alleged against Complete Enclosures is not "a mere failure to act," as Complete Enclosures argues. The issue is whether Complete Enclosures "use[d] due care" in undertaking this action "so as not to unreasonably endanger the well-being of employees of . . . anyone else lawfully on the site of the project . . . ." *Clark*, 379 Mich at 26-262. With this framing of the issue, we conclude that there is a question of fact whether, by removing the plywood and not securing it back in place, Complete Enclosures breached its duty to act so as not to unreasonably endanger the well-being of anyone lawfully on the site of the project.[11] See *id*.[12]

Complete Enclosures also argues that there is no genuine issue of fact regarding proximate cause because it was not foreseeable that plaintiff would not only disregard a barricade to keep him out of the building, but would then enter the opening without looking and fall down to the

---

[11] As will be explained in the next subsection, there is at least a question of fact whether plaintiff was lawfully on the site of the project.

[12] Complete Enclosures also argues that "[s]ummary disposition is required because there is no actionable duty in tort to [plaintiff] that is separate and apart from Complete Enclosures' duties under its subcontract." However, the duty stated in *Clark* is a duty independent of Complete Enclosures' contract that arises under common law, so the separate and distinct analysis is inapt. See *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012) (explaining that a duty "may arise from a statute, a contractual relationship, or by operation of the common law"); *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 167; 809 NW2d 553 (2011) (explaining that the plaintiff's claim in a different case failed in part because that plaintiff "alleged no duty owed to her that was independent of the contract").

basement. "Ordinarily, the determination of proximate cause is left to the trier of fact, but if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should rule as a matter of law." *Berry v J & D Auto Dismantlers, Inc*, 195 Mich App 476, 481; 491 NW2d 585 (1992) (quotation marks and citation omitted). Reasonable minds could differ whether it was reasonably foreseeable that other persons working at the site would move the unsecured plywood to gain entrance to the building. Indeed, Vision Quest's president testified that the secured plywood was in place "so that a layperson couldn't just walk up and gain access into the building," demonstrating that the barricade was there in the first place because it was foreseeable that others would try to gain access to the building through the door. Accordingly, the trial court properly found that there was a question of fact whether plaintiff's actions were foreseeable.

Complete Enclosures also argues that plaintiff's own negligence is a bar to his recovery. Whether plaintiff acted negligently in this case does not preclude his recovery, however, though it may lead to a reduction in damages under the doctrine of comparative negligence. See *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 523; 629 NW2d 384 (2001) ("Under comparative negligence, where both the plaintiff and the defendant are culpable of negligence with regard to the plaintiff's injury, this reduces the amount of damages the plaintiff may recover but does not preclude recovery altogether.") The issue of a plaintiff's comparative negligence is ordinarily a matter for a jury. See *Rodriquez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). In a single line, Complete Enclosures also implies that plaintiff should have avoided the opening in the floor because the danger was an open and obvious, but the open and obvious doctrine does not apply to actions based in ordinary negligence. *Hiner v Mojica*, 271 Mich App 604, 615; 722 NW2d 914 (2006).[13]

For these reasons, the trial court did not err when it denied Complete Enclosures' motion for summary disposition with respect to its potential liability for subcontractor negligence.

## B. WRONGFUL-CONDUCT RULE

Complete Enclosures also argues that plaintiff should be barred from recovery under the wrongful-conduct rule. We disagree.

The common-law wrongful-conduct rule precludes a plaintiff from recovering when his claim is based in whole or in part on the plaintiff's wrongful conduct. *Orzel v Scott Drug Co*, 449 Mich 550, 558-559; 537 NW2d 208 (1995); *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 89; 697 NW2d 558 (2005). "To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute" and the wrongful conduct must be serious in nature. *Orzel*, 449 Mich at 561. See also *Hashem*, 266 Mich App at 89. "For the wrongful-conduct rule to apply, a sufficient causal nexus must exist between

---

[13] We note, however, that whether plaintiff was negligent for failing to notice the opening in the floor given that it was allegedly obvious may be an issue of comparative negligence and, thus, may be an issue for the factfinder.

the plaintiff's illegal conduct and the plaintiff's asserted damages." *Orzel*, 449 Mich at 564. In *Orzel*, the Court further explained:

> [The plaintiff's] injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. [*Id*. at 565 (quotation marks and citation omitted; alteration in *Orzel*).]

The wrongful-conduct rule bars recovery in tort if (1) the plaintiff's conduct is prohibited or almost entirely prohibited under a penal or criminal statute, (2) a sufficient causal nexus exists between the plaintiff's illegal conduct and the plaintiff's asserted damages, and (3) the defendant's culpability is not greater than the plaintiff's culpability. *Varela v Spanski*, 329 Mich App 58, 81; 941 NW2d 60 (2019).

In the instant case, to establish plaintiff's wrongful conduct, Complete Enclosures relies on MCL 750.115(1), which provides:

> Any person who breaks and enters or enters without breaking, any dwelling, house, tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, boat, ship, railroad car or structure used or kept for public or private use, or any private apartment therein, or any cottage, clubhouse, boat house, hunting or fishing lodge, garage or the out-buildings belonging thereto, any ice shanty with a value of $100.00 or more, or any other structure, whether occupied or unoccupied, *without first obtaining permission to enter from the owner or occupant, agent, or person having immediate control thereof*, is guilty of a misdemeanor. [Emphasis added.]

Complete Enclosures has not shown that plaintiff violated this statute as a matter of law.

Complete Enclosures argues that plaintiff's authority to enter the building was limited to the doorway secured with the lock box. However, the fact that the lock box was in place to facilitate entry into the building does not mean that a subcontractor's permission to enter was circumscribed to that single entrance. Testimony from Kemppainen, plaintiff, plaintiff's supervisor, and Vision Quest's president all supported a finding that plaintiff, like other subcontractor employees, was not prohibited from using entrances other than the main door for delivery of materials. Rather, each subcontractor was responsible for its own methods of effectuating deliveries. Vision Quest's president testified that he had been told that plaintiff's employer, Foundation Building Materials (FBM), had permission from A4H to deliver the drywall on that Saturday, and that FBM had made other deliveries to jobsites where A4H employees were not present. He also testified that neither he nor Kemppainen were responsible for coordinating subcontractor deliveries, apart from certain deliveries not at issue here. Asked about gaining permission to enter job sites, plaintiff stated that he or others who worked for FBM would try to call the contractor, and would sometimes have blanket permission to enter any of the related structures. He also testified that his supervisor, John Douglas, had given him permission to try to enter the building through another door. Douglas testified that he had called his contact at A4H and been given permission to deliver the drywall on Saturday. Douglas acknowledged that no one

told him to enter the building in the manner that plaintiff did, but he also testified that it was his usual practice, and the expectation, that he would get the drywall and other materials inside the building "in any way we can." Kemppainen testified that, even though he may have expected subcontractors to call so that he could make sure the building had been locked when they left, there was no policy in place that required subcontractors to call him if they were having a delivery scheduled. He further testified that subcontractors could be working at the site in the evenings or on weekends, and that deliveries could occur at any time.

In sum, nothing in the submitted evidence required a finding that plaintiff acted illegally or without permission when he moved the plywood barricade and entered the building to deliver materials. The trial court did not err by rejecting Complete Enclosures' argument that plaintiff's action was barred by the wrongful-conduct rule as a matter of law. Accordingly, we affirm the trial court's order denying Complete Enclosures' motion for summary disposition.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron