HUGHES v PMG BUILDING, INC

Docket No. 199525. Submitted November 4, 1997, at Detroit. Decided December 12, 1997, at 9:20 A.M.

Jonathan Hughes brought an action in the Oakland Circuit Court against PMG Building, Inc., State Carpentry, Inc., and another defendant, seeking damages for injuries he sustained while working for a roofing subcontractor when a porch overhang he was about to begin work on collapsed under his weight. The overhang had been nailed to a newly constructed house and sided, but its permanent support posts had not yet been installed. PMG Building had been both the owner of the house and the general contractor for its construction. State Carpentry had constructed the porch overhang on subcontract with PMG Building. The court, Robert C. Anderson, J., granted summary disposition for PMG Building and State Carpentry, apparently ruling that there existed no genuine issues of material fact and PMG Building and State Carpentry were entitled to judgment as a matter of law. Hughes appealed.

The Court of Appeals *held*:

1. A general contractor may be held liable for the negligence of a subcontractor if it fails to take reasonable steps within its supervisory and coordinating authority to guard against readily observable, avoidable dangers in common work areas that create a high danger of risk to a significant number of construction workers. In this case, PMG Building, as general contractor, cannot be held liable for the negligence of a subcontractor in the absence of evidence that Hughes sustained his injury while working in a common work area or that the porch overhang posed a high degree of risk to a significant number of construction workers.

2. The trial court erred in summarily dismissing Hughes' claim of premises liability against PMG Building. An owner of premises has a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition that the owner knows or should know the invitees will not discover or protect themselves against. In this case, a genuine issue of fact exists with respect to whether the semi-finished porch overhang presented an open and obvious danger to a person in Hughes' posi-

tion such that PMG Building, as the owner of the premises, owed no duty to warn Hughes about the porch overhang.

3. State Carpentry did not owe Hughes a duty to make the premises safe or to warn him about the porch overhang. Hughes was invited to the job site by PMG Building, not by State Carpentry, and he did not use State Carpentry's equipment.

Affirmed in part and reversed in part.

1. NEGLIGENCE — GENERAL CONTRACTORS — SUBCONTRACTORS — DANGERS IN COMMON WORK AREAS.

A general contractor ordinarily is not liable for a subcontractor's negligence; however, a general contractor may be held liable if it fails to take reasonable steps within its supervisory and coordinating authority to guard against readily observable, avoidable dangers in common work areas that create a high degree of risk to a significant number of construction workers.

2. NEGLIGENCE — PREMISES LIABILITY — INVITEES — OPEN AND OBVIOUS DANGERS.

An owner of premises has a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition that the owner knows or should know the invitees will not discover or protect themselves against; the duty does not extend to open and obvious dangers; a danger is open and obvious when it can reasonably be expected that an average person of ordinary intelligence would discover the danger upon casual inspection.

*Fregolle & Fregolle, P.C.* (by *David E. Fregolle*), for Jonathan Hughes.

*Carter & Gebauer* (by *Martin G. Waldman*) and (*Garan, Lucow, Miller, Seward & Becker* by *David M. Shafer*, of Counsel), for PMG Building, Inc.

*Kohl, Secrest, Wardle, Lynch, Clark and Hampton* (by *Janet Callahan Barnes*), for State Carpentry, Inc.

Before: GRIFFIN, P.J., and SAWYER and O'CONNELL, JJ.

O'CONNELL, J. Plaintiff appeals as of right the circuit court order granting summary disposition in favor of defendants PMG Building, Inc., and State Carpentry,

Inc. We affirm with respect to defendant State Car-
pentry and affirm in part and reverse in part with
respect to defendant PMG Building.

This litigation stems from injuries suffered by plain-
tiff while he was performing roofing work as an inde-
pendent contractor. Plaintiff and several other men
were hired by the president of PMG Building to do
roofing work on three new houses. The men arrived
at the site on September 18, 1995, and immediately
began work. The record indicates that the men were
told that the site was ready for shingling and that
they did not report to anyone or review any plans
before beginning work. After finishing the garage on
one house, plaintiff began to shingle a small porch
overhang. The overhang extended two feet from the
house and measured forty-two inches up to the peak
on each side. It was attached to the front of the house
with nails; the permanent support posts had not yet
been installed because the concrete footings had not
been poured. Plaintiff did not talk to anyone about
how the overhang was supported, and did not pry
back the siding to examine the support. Plaintiff
believed that the overhang was sturdy enough to sup-
port his weight. As he stepped onto the overhang to
attach a shingle, the overhang pulled away from the
house and collapsed without warning. Plaintiff fell
twenty feet and suffered severe and permanent
injuries.

On October 20, 1995, plaintiff filed a complaint
against PMG Building, State Carpentry, and Robert
Worm doing business as Bob's Siding.[1] PMG Building

---

[1] The court entered a default judgment against Wurm in plaintiff's favor
on November 13, 1996. Wurm has not appealed the default judgment. The

owned the premises and was the general contractor on the site. Bryan Peruski, the president of PMG Building, drew up the building plans for the house on which plaintiff was working. State Carpentry, another independent contractor and a subcontractor for PMG Building, constructed the porch overhang. PMG Building and State Carpentry both filed motions for summary disposition. On August 23, 1996, upon review of the briefs submitted by the parties, the court entered an order granting summary disposition in favor of PMG Building and State Carpentry. Plaintiff appeals as of right.

The trial court apparently granted summary disposition pursuant to MCR 2.116(C)(10).[2] A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Marx v Dep't of Commerce*, 220 Mich App 66, 70; 558 NW2d 460 (1996). The court must consider the pleadings, affidavits, depositions, and other documentary evidence available to it and grant summary disposition if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.* This Court reviews summary disposition decisions de novo to determine whether the prevailing party was entitled to judgment as a matter of law. *Id.*

order plaintiff appeals pertains only to defendants PMG and State Carpentry.

[2] The trial court's order granting summary disposition did not indicate the basis on which it was being granted. However, only the pleadings may be considered when the motion is based on MCR 2.116(C)(8). MCR 2.116(G)(4). Because all parties submitted documents in addition to their pleadings, and because PMG Building's concurrence was based upon subrule C(10), we will discuss the court's order under MCR 2.116(C)(10) only.

Plaintiff's first argument on appeal is that the trial court erred in granting summary disposition for PMG Building because plaintiff created genuine issues of fact regarding PMG Building's duty as a general contractor to provide a safe workplace. We disagree.

Generally, negligence is conduct involving an unreasonable risk of harm. *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993). The requisite elements of a negligence cause of action are that the defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered. *Id.* Whether a defendant owes any duty to a plaintiff to avoid negligent conduct in a particular circumstance is a question of law for the court to determine. *Schmidt v Youngs*, 215 Mich App 222, 224; 544 NW2d 743 (1996). In determining whether a duty exists, courts examine a wide variety of factors, including the relationship of the parties and the foreseeability and nature of the risk. *Schultz, supra* at 450.

PMG Building was both the landowner and the general contractor of the construction site where plaintiff was injured. Ordinarily, a general contractor is not liable for a subcontractor's negligence. *Signs v Detroit Edison Co*, 93 Mich App 626, 632; 287 NW2d 292 (1979). However, a general contractor may be held liable if it failed to take "reasonable steps within its supervisory and coordinating authority" to guard against "readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." *Funk v General Motors Corp*, 392 Mich 91, 104; 220 NW2d 641 (1974),

overruled in part on another ground *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982). Thus, for there to be liability, there must be: (1) a general contractor with supervisory and coordinating authority over the job site, (2) a common work area shared by the employees of several subcontractors, and (3) a readily observable, avoidable danger in that work area (4) that creates a high risk to a significant number of workers. *Groncki v Detroit Edison Co,* 453 Mich 644, 662; 557 NW2d 289 (1996). It is not necessary that other subcontractors be working on the same site at the same time; the common work area rule merely requires that employees of two or more subcontractors eventually work in the area. *Phillips v Mazda Motor Mfg (USA) Corp,* 204 Mich App 401, 408; 516 NW2d 502 (1994); *Erickson v Pure Oil Corp,* 72 Mich App 330, 337; 249 NW2d 411 (1976).

We find that plaintiff has failed to provide evidence suggesting that a general issue of material fact exists regarding whether plaintiff was injured while working in a "common work area." Plaintiff characterizes the alleged danger at issue in this case as "the danger of collapse of the porch overhang." Since other contractors performed work on the exterior of the house in the vicinity of the overhang, plaintiff argues that these workers were exposed to the same risk and that the overhang constituted a "common work area." In support of this argument, plaintiff points out that workers from State Carpentry assembled and attached the porch. Another subcontractor, Robert Wurm, installed the siding on the overhang. Yet another contractor would later be pouring the cement for the support stanchions. However, there is no evidence in the

record that the employees of any other trade would work on top of the porch overhang. In all probability, after the carpenters built the overhang and attached it to the house, the only workers who would need to gain access to that limited area were the roofers. Thus, giving plaintiff the benefit of any reasonable inferences, we cannot say that other workers would be subject to the same hazard.

Even if plaintiff's argument is correct, however, and the employees of several subcontractors might eventually work in the area of the roof overhang, we do not believe that the overhang created a "readily observable, avoidable . . . risk to a significant number of workmen." *Funk, supra* at 104. We find this case to be distinguishable from *Funk, supra,* and its progeny. Liability was imposed on the general contractor in *Funk* because Funk fell from a highly visible superstructure that was part of the common work area, was within the control of the defendant, and posed a risk to thousands of other workers. In *Funk,* the Court employed a risk analysis, finding that liability should not be imputed unless the dangers in the work area involve "a *high degree* of risk to a *significant number* of workers." *Funk, supra* at 104 (emphasis added). See *Plummer v Bechtel Constr Co,* 440 Mich 646, 651; 489 NW2d 66 (1992) (the plaintiff fell from an interconnecting catwalk/platform system at a construction project involving 2,500 workers and a number of subcontractors); *Erickson, supra* at 337 (the plaintiff fell from a roof used by numerous subcontractors when he slipped on oiled metal roof sheets). Here, it is uncontroverted that plaintiff was one of only four men who would be working on top of the overhang. Accordingly, we conclude not only that

plaintiff's injury did not arise in a "common work area," but that defendant did not breach its duty to guard against a danger posing a "high degree of risk to a significant number of workmen." *Funk, supra.* Defendant was entitled to judgment on this issue as a matter of law.

We believe that a contrary conclusion would swallow the "rule" espoused in *Funk, supra.* If the top of the overhang or even the overhang in its entirety were considered to be a "common work area" for purposes of subjecting the general contractor to liability for injuries incurred by employees of subcontractors, then virtually no place or object located on the construction premises could be considered not to be a common work area. We do not believe that this is the result the Supreme Court intended. This Court has previously suggested that the Court's use of the phrase "common work area" in *Funk, supra,* suggests that the Court desired to limit the scope of a general contractor's supervisory duties and liability. See, e.g., *Erickson, supra* at 336. We thus read the common work area formulation as an effort to distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard. See *Plummer, supra* at 667. In the first instance, each subcontractor is generally held responsible for the safe operation of its part of the work. In the latter case, where a substantial number of employees of multiple subcontractors may be exposed to a risk of danger, economic considerations suggest that placing ultimate responsibility on the general contractor for job safety in common work

areas will "render it more likely that the various sub-contractors . . . will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas." *Funk, supra* at 104. We do not feel that such considerations dictate the result in the present case.

Plaintiff also argues that the evidence in the record creates a genuine issue of material fact regarding his claim of premises liability against PMG Building as the owner and occupier of the premises. We find that this is an appropriate basis for imposing a duty on PMG Building. We also find that plaintiff presented enough evidence to establish a genuine issue of material fact regarding this issue. Accordingly, we reverse the trial court's decision to grant summary disposition in favor of PMG Building.[3]

Generally, a landowner is not responsible for injuries caused by a carefully selected contractor to whom he has delegated the task of erecting a structure. *Funk, supra* at 101. However, an owner has a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition that the owner knows or should know the invitees will not discover or protect themselves against. *Butler v Ramco-Gershenson,* 214 Mich App 521, 532; 542 NW2d 912 (1995) (citing *Bertrand v Alan Ford Inc,* 449 Mich 606, 609; 537 NW2d 185 [1995]). An invitee is a person who enters the land of

---

[3] Once again, we are unable to determine from the record whether the trial court based its decision to grant summary disposition on this issue. However, because we conclude that plaintiff provided sufficient evidence to support a landowner liability theory, we find that an order to remand the case is appropriate on this basis.

another on an invitation that carries with it an implication that the owner has taken reasonable care to prepare the premises and to make them safe. *Eason v Coggins Memorial Christian Methodist Episcopal Church,* 210 Mich App 261, 263; 532 NW2d 882 (1995). This duty of care generally extends to invitees who are employees of independent contractors. *Butler, supra.*

While an invitor must warn of hidden defects, there is generally no duty to warn of "open and obvious" dangers. *Eason, supra* at 263-264. Whether a danger is open and obvious depends upon whether it is reasonable to expect an average person of ordinary intelligence to discover the danger upon casual inspection. *Novotney v Burger King Corp (On Remand),* 198 Mich App 470, 474-475; 499 NW2d 379 (1993). This rule, however, is subject to the above exception; even if a danger is open and obvious, a possessor of land may still have a duty to protect invitees against foreseeably dangerous conditions. *Bertrand, supra* at 610-611. The Supreme Court clarified this rule in *Bertrand, supra* at 611:

> [T]he rule generated is that if the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide. [Emphasis in *Bertrand.*]

A landowner's duty to protect invitees may include a duty to warn. There is no *absolute* obligation to warn of open and obvious dangers. *Id.* at 612. However, even though there may not be an absolute obligation to provide a *warning*, this rule does not relieve the invitor from his duty to exercise reasonable care to protect his invitees against known or discoverable dangerous conditions. *Id.* at 613. The rationale behind this rule is that liability for injuries incurred on defectively maintained premises should rest upon the party who is in control or possession of the premises, and, thus, is best able to prevent the injury. *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 91; 485 NW2d 676 (1992).

In the present case, the proofs create a question of fact with respect to whether the danger was "open and obvious" and whether the risk of harm was unreasonable. Clearly, the danger of falling off the roof overhang is open and obvious. However, the particular risk at issue in this case—that the overhang would collapse when plaintiff put one foot on it—is not so obvious. The test set forth in *Eason, supra* at 264, that it is "reasonable to expect an average user with ordinary intelligence to discover the danger upon casual inspection," is an objective one. *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1, 12; 497 NW2d 514 (1993). Thus, we look not to whether plaintiff should have known that the overhang was hazardous, but to whether a reasonable person in his position would foresee the danger. After reviewing the record, we conclude that a genuine issue of material fact exists regarding whether the danger posed by the overhang could have been discovered upon casual inspection by a reasonable per-

son in plaintiff's position. The porch overhang was attached to the house and sided, which obscured from sight the manner of attachment. Plaintiff testified that he was not aware that the overhang might collapse, and that he believed that the overhang was safe because it was sided and ready to be shingled. Given these facts, a person in plaintiff's position could reasonably believe that the roof overhang was sturdy enough to support his weight.

The trial court erred in granting summary disposition to PMG Building. Given our conclusion that plaintiff has presented a genuine issue of material fact regarding the risk of harm and the nature of that risk, the existence of duty as well as breach become questions for the jury to decide. *Bertrand, supra* at 617. If the jury determines that the risk of harm created by the unsupported porch overhang was unreasonable, then defendant's duty to exercise reasonable care extended to this particular risk. *Id.*

Plaintiff's final argument on appeal is that a genuine issue of fact existed regarding its negligence claim against State Carpentry. We disagree. The "common work area" exception under *Funk*, which can impose liability on a general contractor, does not apply where the employee of one subcontractor seeks to recover from another subcontractor. *Funk, supra* at 104, n 6. Instead, the immediate employer of a construction worker is generally responsible for job safety. *Funk, supra* at 102. Plaintiff was working on the construction site as an independent contractor. He was not invited onto the site by State Carpentry and did not use State Carpentry's equipment. As such, State Carpentry had no duty to make the premises safe for plaintiff or to warn plaintiff of a known dangerous

condition. See *Klovski v Martin Fireproofing Corp*, 363 Mich 1, 5; 108 NW2d 887 (1961). We therefore conclude that the trial court properly granted summary disposition in favor of State Carpentry.

Reversed in part and affirmed in part with respect to plaintiff's claims against PMG Building. Affirmed with respect to plaintiff's claims against State Carpentry.