*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ESTATE OF JOSEPH DANIEL VELEZ, JR., by
Guardian/Conservator SUSAN MOORE,

UNPUBLISHED
January 30, 2020

Plaintiff-Appellant,

v

RICHARD SHAFER, KAREN SHAFER, R.
SHAFER BUILDERS, REVOCABLE LIVING
TRUST AGREEMENT DATED 12/14/89, by
trustees RICHARD N. SHAFER and KAREN J.
SHAFER,

No. 345101
Macomb Circuit Court
LC No. 2017-002389-NO

Defendants-Appellees,

and

HENSLEY MANUFACTURING, INC.,

Defendant.

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Joseph Daniel Velez, Jr., suffered incapacitating injuries when he fell off of a building while performing roofing work. His estate ("plaintiff") appeals the trial court's grant of summary disposition under MCR 2.116(C)(10) in favor of the Shafer defendants (collectively "defendants"). For the reasons stated in this opinion, we affirm the grant of summary disposition regarding plaintiff's claim under the common work area doctrine, but reverse the court's ruling that plaintiff failed to establish a question of fact on its claim of premises liability.

## I. BACKGROUND

Velez was part of a crew of workers assigned to install a water-proof membrane over the recently installed roof of an addition to a building owned by defendants Richard and Karen Shafer.[1] The building was located in an industrial park owned by the Shafers. Richard's own construction company, defendant R. Shafer Builders, was the general contractor on the building project. Shafer Builders performed much of the work on the project using its own employees. Relevant to this appeal, Shafer employees erected the steel roofing supports and roof decking; after the roof decking was complete, the employees installed the roof's block wall insulation.

Shafer Builders hired an individual, Larry Gill, to install the roofing membrane. Gill hired several day laborers, including Velez, on a cash basis to provide labor to do the installation. There was no written contract between Gill and defendants. Moreover, Gill was not a licensed contractor, and he did not have employees, a business organization, or a safety program for the workers he "hired." Also, he did not carry either workers compensation insurance or general liability insurance. Before hiring Gill for this job, defendants did not inquire whether he carried insurance.

The roofing installation occurred over the course of two days, August 20 and 24, 2016. On August 24, 2016, Velez fell from the 20-foot roof and suffered catastrophic injuries, leaving him severely disabled and legally incompetent. At the time Velez fell, there were no safety or fall-protection devices in place on the roof. Gill testified that no Shafer employee or representative was present at the work site, but testimony establishes that numerous Shafer agents were nearby at the industrial park while Gill and his crew were working.

Plaintiff brought suit in June 2017, asserting claims for premises liability and common work area liability. After discovery was completed, defendants moved for summary disposition under MCR 2.116(C)(10). In June 2018, the trial court issued a written opinion and order granting defendants' motion. Regarding the premises-liability claim, the trial court found no genuine issue of material fact that the condition of the roof was open and obvious and that defendants had no reason to foresee that Gill would fail to take necessary precautions to guard against the "danger of being on a roof." With respect to the common work area doctrine, the court concluded that plaintiff failed to establish a question of fact as to whether the danger created a high degree of risk to a significant number of workmen in a common area. The court denied plaintiff's motion for reconsideration and its motion to amend the complaint to add a claim of "active negligence" against defendants.

---

[1] The building was leased to defendant Hensley Manufacturing, Inc., who was granted summary disposition.

## II. ANALYSIS

## A. PREMISES LIABILITY

Plaintiff first argues that the trial court erred in granting defendants, in their capacity as owners of the building, summary disposition of the premises-liability claim. We agree.[2]

There is no dispute that Velez was on defendants' premises as an invitee, i.e., a person "who enter[ed] the premises at the owner's express or implied invitation to conduct business concerning the owner[.]" *Butler v Ramco-Gershenson, Inc*, 214 Mich App 521, 532; 542 NW2d 912 (1995). "[A] landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). "However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). But if there are "special aspects" that make an open and obvious condition unreasonably dangerous, a landowner "has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001).

The trial court found that summary disposition of the premises-liability claim was required by *Perkoviq v Delcor Home-Lake Shore Pointe, Ltd*, 466 Mich 11; 643 NW2d 212 (2012). In that case, the plaintiff was "working on the roof of a home under construction when he slipped on ice or frost that had formed on the roof, falling approximately twenty feet to the ground and suffering serious injuries." The defendant was both the owner and general contractor of the property. *Id*. at 12. Applying the open and obvious danger doctrine, the Supreme Court held that the defendant, as an owner, was entitled to summary disposition of the premises-liability claim. *Id*. at 18. The Court reasoned as follows:

> In its status as owner, defendant had no reason to foresee that the only persons who would be on the premises, various contractors and their employees, would not take appropriate precautions in dealing with the open and obvious conditions

---

[2] We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Cichewicz v Salesin*, 306 Mich App 14, 21; 854 NW2d 901 (2014). "A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When addressing a motion for summary disposition brought under subrule (C)(10), the court must examine all documentary evidence presented to it, and drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010).

of the construction site. There were no special aspects of this condition that made the open and obvious risk unreasonably dangerous. [*Id*. at 18.[3]]

Plaintiff argues that this case is distinguishable from *Perkoviq* because there is a question of fact whether defendants had reason to anticipate that Gill would not take appropriate safety measures. Viewing the evidence in a light most favorable to plaintiff, we agree.

Defendants note that Gill was an experienced roofer who had provided satisfactory work for them in the past. It is highly relevant whether Gill used appropriate safety measures during the prior jobs for defendants and what defendants knew of those measures. Unfortunately, the record is not as developed on those matters as one would hope. That said, there are multiple indications in the record that defendants knew or had reason to know that Gill would fail to employ safety precautions. Gill testified that there was not anything unusual about the roofing job at issue, allowing for the inference that Gill did not typically provide fall protection for his day laborers. The record also indicates that when Richard, Gill, and Richard's son Raymond Shafer met to discuss the accident shortly after it happened, there was no indication that the Shafers were surprised to learn that Gill failed to take required safety precautions.[4] A reasonable

---

[3] The dissent focuses on *Perkoviq's* language that the roof was not unreasonably dangerous but ignores that the Court also repeatedly stated that the owner had no reason to know that appropriate precautions would be not be taken. See *Perkoviq*, 466 Mich at 18-19. Although not expressly stated, *Perkoviq* indicates that the lack of safety precautions, and the owner's knowledge thereof, renders a roofing job unreasonably dangerous for purposes of a premises-liability claim. In any event, the Court's statements regarding the foreseeability of necessary precautions were clearly necessary to its resolution of the case and not mere dicta. Accordingly, they constitute binding precedent. See *Auto-Owners Ins Co v All Star Lawn Specialists Plus, Inc*, 497 Mich 13, 21 n 15; 857 NW2d 520 (2014).

[4] In relevant part, Raymond provided the following testimony about that conversation:

*Q*. Anything else discussed at that time?

*A*. Speculation of what happened.

*Q*. And who speculated? Larry, your dad, you, all of you, none of you?

*A*. How do you fall off a roof? That's what was speculated. A roofer doesn't fall off a roof.

*Q*. Okay. Anything else that sticks out in your mind about the conversation?

*A*. His shoe being 50 feet away. Was there a bee. I don't know. I don't know. Speculation. Disgust.

*Q*. Anything else stick out in your mind about the conversation?

*A*. No.

inference is that defendants knew or had reason to know that Gill was not using fall protection. Moreover, there was evidence that defendants were paying Gill substantially less than what an "established" roofing contractor would charge. This indicates that Gill had less costs and requirements than other roofers, and was therefore more likely to forego the time and expense required to implement fall protection.

In sum, Gill was hired to finish a roofing project that was largely completed by defendants. Defendants chose Gill in part because he cost substantially less than established, i.e., licensed and insured, roofers. Defendants worked with Gill multiple times in the past, although the record is silent regarding his use of safety precautions for those jobs. However, Gill's testimony was that there was nothing unusual about his work in this case. It could be inferred from Raymond's testimony that defendants presumed that safety measures were not being used, or were not surprised to learn that fact. Further, the work was being done on defendants' property over the course of two days with several of their agents and employees on the surrounding premises. While the jury may ultimately agree with the dissent's view of the case, we conclude that reasonable minds could find that defendants knew or had reason to know that Gill would not take necessary safety precautions while installing the roofing membrane. See *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) ("A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ."). Accordingly, the trial court erred in granting defendants summary disposition of the plaintiff's claim of premises liability.[5] See *Perkoviq*, 466 Mich at 18-19.

## B. COMMON WORK AREA

Next, plaintiff contends that the trial court erred when it granted summary disposition to defendants, in their capacity as general contractor, of plaintiff's claim under the common work area doctrine. We disagree.

"At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 48; 684 NW2d 320 (2004). In *Funk v Gen Motors Corp*, 392 Mich 91, 104; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Systems, Inc*, 414 Mich 29; 323 NW2d 270 (1982), the Supreme Court created an exception to this rule called the common work area doctrine. A claim of negligence under the doctrine requires the plaintiff to prove:

---

The lack of safety precautions is an obvious answer to Raymond's question about how a roofer would fall from a roof. Yet his summary of the post-fall discussion indicates that the lack of safety measures was presumed, and that the "[d]isgust" was focused on Velez.

[5] As an alternative ground for affirmance, defendants argue that they are entitled to summary disposition because plaintiff does not know what caused Velez to fall off the roof. However, regardless of what caused the fall, appropriate safety protections would have prevented it. Thus the term "fall protection."

(1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Ormsby*, 471 Mich at 57.]

A plaintiff's failure to establish any one of these four elements is fatal to a *Funk* claim. *Id*. at 59 n 11.

Plaintiff argues that the trial court erred in concluding that there were not a significant number of workers subjected to working at heights without fall protection. The common work area doctrine applies "where employees of a number of subcontractors were all subject to the same risk or hazard." *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 6; 574 NW2d 691 (1997). *Hughes* advised that four workers was an insufficient amount to constitute a significant number. *Id*. at 8-9. The Supreme Court has held that "two to six employees of one subcontractor" was not a significant amount of workers. *Alderman v JC Dev Communities, LLC*, 486 Mich 906, 906 (2010).

Here, the record evidence indicates that Gill's roofing crew numbered seven people including Gill and plaintiff. Plaintiff identified defendants' employees that installed the decking and insulation on the roof of the building, but those workers do not count because they were not employees of subcontractors. Further, as will be discussed below, the record indicates that those employees used fall protection. There is some evidence that a plumber performed work on or near the roof. But plaintiff was not able to identify the plumber, the day the plumber worked, or whether the plumber used fall protection. Thus, plaintiff failed to present evidence that the plumber was subjected to the same hazard as Gill's workers. Accordingly, plaintiff did not establish a genuine issue of material fact with regard to the third element of the common work area doctrine because seven workers of one subcontractor does not amount to a significant number for purposes of the common work area doctrine. See *Alderman*, 486 Mich at 906.

## C. NEGLIGENCE

Finally, plaintiff contends that the trial court erred when it denied her request for leave to amend the complaint to add a claim of active negligence against defendants in their capacity as general contractor. Because the proposed amendment was futile, we affirm the trial court.[6]

When a trial court grants a motion for summary disposition under MCR 2.116(C)(10), it "must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324

---

[6] We review for an abuse of discretion a trial court's decision whether to grant leave to amend a complaint. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

Mich App 182, 209; 920 NW2d 148 (2018) (quotation marks and citation omitted), An amendment to a pleading "is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).

"It is well-established that a prima facie case of negligence requires a plaintiff to prove four elements: duty, breach of that duty, causation, and damages." *Fultz v Union-Commerce Associates*, 470 Mich 460, 463, 683 NW2d 587 (2004). The common law "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Heaton v Benton v Harbor Co*, 286 Mich App 528, 536; 780 NW2d 618 (2009) (quotation marks and citation omitted).

Plaintiff claims that defendants were actively negligent when they removed a fall protection anchor point from the roof. Plaintiff relies on evidence that employees of Shafer Builders installed and then removed the anchor point that they were using while installing the roof decking after they had completed their portion of the work. Defendants counter that the removal of the anchor point does not support a claim of negligence because it did not create a new hazard. We agree with defendants.

There may be instances where a general contractor performs its part of the work negligently, thereby endangering subsequent subcontractors. But, here, defendants only removed the safety measures that they were using. So plaintiff's proposed negligence claim amounts to an assertion that defendants were responsible for providing fall protection for Gill and his workers. However, "each subcontractor is generally held responsible for the safe operation of its part of the work," and a general contractor only has the responsibility to provide job safety for subcontractors if the common area work doctrine is applicable. See *Hughes*, 227 Mich App at 8-9. As discussed, plaintiff's claim of a common work area fails as a matter of law. Thus, the proposed amended complaint seeking to hold defendants liable for not providing fall protection to Gill and his workers was futile. For that reason, we affirm the trial court.[7]

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro

---

[7] The trial court based its ruling on the conclusion that the motion was procedurally deficient, but we may affirm the trial court when it reaches the right result for the wrong reason. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).