*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD LARSEN,

　　　　　Plaintiff-Appellant,

v

VISION QUEST CONSULTINGS, INC.,

　　　　　Defendant-Appellee,

and

COMPLETE ENCLOSURES, INC.,

　　　　　Defendant.

UNPUBLISHED
June 9, 2022

No. 353440
Eaton Circuit Court
LC No. 19-000059-NO

---

RONALD LARSEN,

　　　　　Plaintiff-Appellee,

v

COMPLETE ENCLOSURES, INC.,

　　　　　Defendant-Appellant,

and

VISION QUEST CONSULTINGS, INC.,

　　　　　Defendant-Appellee.

No. 354028
Eaton Circuit Court
LC No. 19-000059-NO

---

Before: RICK, P.J., and O'BRIEN and CAMERON, JJ.

RICK, P.J. *(concurring in part and dissenting in part)*.

-1-

I completely agree with my esteemed colleagues' analysis in Docket No. 354028 to affirm the trial court's denial of Complete Enclosures' motion for summary disposition. I disagree, however, with my colleagues' analysis in Docket No. 353440 that the trial court properly granted summary disposition in favor of Vision Quest. I would conclude that plaintiff established there was a genuine issue of material fact regarding whether Vision Quest could be liable for plaintiff's injuries under the common-work-area doctrine. As such, I believe that the trial court erred by granting Vision Quest's motion for summary disposition. I would reverse the trial court and remand for further proceedings. It is for that reason I write separately.

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Coblentz v Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Vision Quest moved for summary disposition under MCR 2.116(C)(10). In reviewing a motion under this subrule, a court must review the substantively admissible evidence submitted by the parties and must review this evidence and "all legitimate inferences in the light most favorable to the nonmoving party." *Coblentz*, 475 Mich at 567-568. Summary disposition under MCR 2.116(C)(10) is appropriate "[w]here the proffered evidence fails to establish a genuine issue regarding any material fact" and the moving party is entitled to judgment as a matter of law. *Id.* at 568 (quotation marks and citation omitted).

The applicability of a legal doctrine, such as the common-work-area doctrine, presents a question of law, calling for review de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). Likewise, application of Michigan's wrongful-conduct rule presents a question of law that we review de novo. See *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008).

## II. COMMON WORK-AREA DOCTRINE

The majority and I both acknowledge the controlling law at issue is the application of the common-work-area doctrine, as explained in *Ormsby v Capital Welding, Inc*, 471 Mich 45, 55-56; 684 NW2d 320 (2004). A plaintiff invoking the common-work-area doctrine against a general contractor has the burden of showing "that (1) the defendant . . . failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of work[ers] (4) in a common work area." *Ormsby*, 471 Mich at 54. However, the majority and I differ in our analysis of facts as applied to this doctrine.

The majority concludes that the trial court properly determined that, by hiring BQW Properties (BQW), Vision Quest satisfied its duty to take reasonable steps within its supervisory and coordinating authority to guard against the danger presented by the opening in the floor where plaintiff fell. The majority also concludes that Vision Quest had acted responsibly by hiring BQW and A4h, and that plaintiff had not shown that the danger associated with the doorway where plaintiff fell involved a high degree of risk to a significant number of workers, or that the accident occurred in a common work area. I respectfully disagree.

-2-

## A. REASONABLE STEPS TO GUARD AGAINST READILY OBSERVABLE AND AVOIDABLE DANGERS

With respect to the danger in the instant case, I believe that a reasonable juror could find that the open doorway leading to a short landing followed by an open drop created a readily observable danger that was avoidable if proper safety precautions were taken. Both the actual danger and the reasonable steps to protect against such a fall are encompassed by Occupational Safety and Health Administration regulations, specifically 29 CFR 1926.501(b)(15), which provides:

> Except as provided in § 1926.500(a)(2) or in § 1926.501 (b)(1) through (b)(14), each employee on a walking/working surface 6 feet (1.8 m) or more above lower levels shall be protected from falling by a guardrail system, safety net system, or personal fall arrest system.

"In Michigan, the violation of administrative rules and regulations is evidence of negligence, and therefore when a violation is properly pled it may be submitted to the jury." *Zalut v Andersen & Assoc, Inc,* 186 Mich App 229, 235; 463 NW2d 236 (1990).

I believe the trial court erred when it found that plaintiff had not shown a question of fact whether Vision Quest breached its duty of care. First, with respect to the choice of remediation, the trial court and majority conclude that barricading the doorway leading to the landing and open area met the requirements in 29 CFR 1926.501(b)(15). I disagree. Barricading of a doorway, which others were working around and could be removed in order to work, is not the same as barricading the actual landing with a "guardrail system."

According to plaintiff, there was only a sheet of plywood propped up against the doorway, but it was not secured to the frame. After plaintiff moved the plywood, he walked through the doorway onto a landing and placed the plywood on the inside wall. He then turned to walk down what he believed to be a hallway, took a step, and fell downward. The danger of using plywood to barricade the door instead of using a guardrail on the landing is well exemplified here where one group of contractors could, and did, easily remove the plywood in order to work on the outside of the building and failed to replace it properly. In contrast, had plaintiff, for example, entered the opening and saw that the landing had been barricaded or, because the landing area was dark, even accidentally moved into the guardrail, the fall may not have occurred. Given the particular danger involved, there is a question of fact whether the "fix" was reasonable or satisfied the requirements in 29 CFR 1926.501(b)(15).

Furthermore, I take issue with the conclusion that Vision Quest's delegation of responsibility to BQW was sufficient as a matter of law to show that Vision Quest took reasonable measures to protect against the danger. Vision Quest contracted with BQW to manage the site. However, Brian Kemppainen, BQW's onsite superintendent, testified in his deposition that Vision Quest's president, Brandon Kaufman, also owned BQW. In addition, although Vision Quest argues that Kemppainen also acted properly when engaging A4h to enclose the building, Kaufman testified that Kemppainen did not negotiate contracts on behalf of Vision Quest with any subcontractors. It is thus questionable whether the "delegation" of any safety responsibilities to BQW actually occurred here. The trial court relied on Kemppainen's deposition testimony that he

"was responsible for getting the . . . fall protection" for the site. However, what Kemppainen believes he was responsible for does not speak to what legal responsibility Vision Quest had. In addition, given the recognized danger, even if A4h had properly secured the plywood initially, a reasonable fact-finder could find that Kemppainen should have checked the barriers at least at the end of the workday to determine whether the barriers were properly secured, particularly where Kaufman also testified that the barriers were in place "so that a lay person couldn't just walk up and gain access into the building."

I conclude that there is a material question of fact whether Vision Quest took reasonable steps within its supervisory and coordinating authority to guard against the obvious danger and fall risk posed by the unbarricaded doorway leading to a short landing with an open drop into the building's basement.

## B. HIGH DEGREE OF RISK TO A SIGNIFICANT NUMBER OF WORKERS AND COMMON WORK AREA

The majority concludes that the trial court properly held that plaintiff had not shown that the involved danger created a high degree of risk to a significant number of workers or occurred in a common work area. The majority finds credence in the trial court's explanation that plaintiff had failed to show that anyone other than he had used the landing inside the opening, such that whatever risk there was, it was not one for a significant number of workers. Both the majority and the trial court held that evidence that people had worked "around the landing" was not sufficient to show that other employees worked on the landing. In my view, however, the submitted evidence does not support these conclusions.

With respect to what constitutes a significant number of persons put at risk, the common-work-area doctrine "distinguish[es] between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard." *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 8; 574 NW2d 691 (1997). "It is not necessary that other subcontractors be working on the same site at the same time; the common work area rule merely requires that employees of two or more subcontractors eventually work in the area" when the risk of harm is present. *Id.* at 6.

Kaufman and Kemppainen both provided deposition testimony about the workers in the area. Kaufman testified that, in addition to plaintiff and the mason employees from Complete Enclosures, other trades worked in the area of the opening. A different "rough carpentry" company was hired to install the stairs. Kaufman also stated that masons were working in the area, as evidenced by the scaffolding outside the door. He acknowledged that, at some point, the fire suppression company would also be working in the area, but he did not know when or if they had already finished their work in the area. Kaufman also admitted that A4h employees had worked around the doorway when they installed the drywall on the inside wall of the stairway area, prior to the masonry work. Kemppainen acknowledged that Complete Enclosures employees were working at the site on the Friday before the accident, on the outside wall near the opening. Kemppainen also testified that electrical contractors were working in the building on Friday. Kemppainen also agreed that he would expect that "at any given point in time, any electrician is

-4-

going to be doing work anywhere around that building." He explained that, although the electricians worked in one area at a time, they could be working anywhere in the building because they needed to pull wires throughout the building. He also testified that there were no electricians working in the stairwell until after the stairs were completed. But Kemppainen further acknowledged that the carpenters and drywall workers from A4h would have also been working in the area before the accident, and that the opening was barricaded at that time. Kemppainen further testified that even though the door that plaintiff entered may not necessarily have been a prime access point to get into the building, there were contractors working around this entryway. Given this testimony, I submit there was a genuine issue of material fact whether a significant number of persons were put at risk by the opening in the floor into the basement.

The question is not whether the doorway posed a danger when properly barricaded. The danger is that of falling into the opening in the floor after entering the doorway. The open drop into the building's basement, which plaintiff fell into after entering the doorway and turning into the landing area, is the danger to be made safe. Until the stairway was completed, this opening posed a danger to anyone working at the site. This fact is supported by the very fact that the Complete Enclosures employees were required to remove the screws holding the plywood barricade shortly before plaintiff's fall. In addition, a jury could find that a reasonable contractor would expect that one of the workers could try, such as plaintiff did after his accident, to move from the top of the scaffolding in the basement to the landing, perhaps in order to get some equipment faster or more easily. Such workers would, if they chose to enter the same way they left, be exposed to the fall danger twice. This further supports a finding that the doorway and landing was a common work area that presented a high degree of risk to a significant number of workers.

For these reasons, I conclude that the trial court erred when it granted Vision Quest's motion for summary disposition. The evidence established a question of fact as to whether Vision Quest could be liable for plaintiff's injuries under the common-work-area doctrine. Accordingly, I would reverse the trial court's order granting summary disposition in favor of Vision Quest and remand for further proceedings.

/s/ Michelle M. Rick