*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW BELOBRADICH,

       Plaintiff-Appellee,

v

CENTENNIAL HOME GROUP, LLC,

       Defendant-Appellant.

UNPUBLISHED
October 19, 2023

No. 362936
Oakland Circuit Court
LC No. 2019-177853-NO

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant, Centennial Home Group, LLC, appeals by leave granted[1] the trial court's order denying its motion for summary disposition. We affirm.

This action arises from injuries plaintiff, Matthew Belobradich, sustained while working construction. Plaintiff was employed by nonparty Bristol Construction, which defendant, a general contractor, hired as the framing subcontractor for a residential project in West Bloomfield. On November 8, 2016, plaintiff fell from the roof of the project while installing roof sheeting. Plaintiff testified at his deposition that two other Bristol employees were working on the roof when he fell.

In plaintiff's amended complaint, he asserts liability for his injuries against defendant under the common work area doctrine. Specifically, he alleges: defendant served as the general contractor on the project, and contracted with multiple subcontractors, including Bristol, to perform the construction; defendant owed a duty to workers to take reasonable steps to avoid dangers in common work areas which created a high degree of risk to a significant number of workers; the roof constituted a common work area; defendant was aware of dangers creating a high degree of risk to a significant number of workers, including falling from the roof due to the

---

[1] *Belobradich v Centennial Home Group LLC*, unpublished order of the Court of Appeals, entered February 15, 2023 (Docket No. 362936).

absence of fall protection or adequate safety barriers; and defendant failed to guard against these dangers.

Defendant moved for summary disposition of plaintiff's claim under MCR 2.116(C)(10), asserting it could not be held liable for plaintiff's injuries under the common work area doctrine, because plaintiff failed to establish the third and fourth elements of a common work area claim. Defendant argued the danger at issue was working at heights without fall protection or safety barriers; two to six workers exposed to a specific danger does not constitute a significant number; and plaintiff testified only three workers from the same subcontractor were exposed to the alleged danger of working at heights without fall protection. Further, in discussing the fourth element, defendant stated:

> Here, there is no evidence – or even allegation – that any contractors other than Plaintiff's employer were going to be exposed to the alleged danger of working at heights *without fall protection*. The "high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed."

In his response and supplemental brief, plaintiff argued the third element does not require that a significant number of workers be exposed to the danger at the exact time of injury, and the evidence available established a minimum of 15 to 18 workers from different subcontractors were exposed to the risk of working at heights without fall protection equipment on the subject project. The trial court agreed and denied defendant summary disposition under MCR 2.116(C)(10), stating, in pertinent part:

> In the case at bar, the testimony shows at least eight and possibly several more persons were on the roof and subjected to the hazard of working on the roof without fall protection. In reviewing the evidence in the light most favorable to the non-movant, it is possible for a reasonable juror to return a verdict in favor of Plaintiff as to this element. Therefore, the motion for summary disposition pursuant to MCR 2.116(C)(10) is denied.

> Defendant next argues the roof does not constitute a common work area. In order to qualify as a common work area, there must be evidence that employees of two or more subcontractors were working in the area. The evidence in the case at bar demonstrates the roofing subcontractor as well as the subcontractor responsible for delivering the shingles and the plumbing contractor all worked on the roof. In reviewing the evidence in the light most favorable to Plaintiff, it is possible for a reasonable juror to return a verdict in his favor as to this element. Therefore, the motion for summary disposition pursuant to MCR 2.116(C)(10) is denied.

On appeal, defendant challenges the trial court's findings on element three of plaintiff's common work area claim, arguing plaintiff failed to establish that a significant number of workers were exposed to the danger of working on the roof without fall protection. We disagree.

This Court reviews de novo a trial court's grant of summary disposition. *Int'l Union UAW v Central Mich Univ Trustees*, 295 Mich App 486, 493; 815 NW2d 132 (2012).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. The pleadings, affidavits, depositions, and other documentary evidence are reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. If reasonable minds could differ on an issue, a genuine issue of material fact exists. [*Bellmore v Friendly Oil Change, Inc*, 341 Mich App 514, 520-521; 991 NW2d 236 (2022) (citations omitted).]

"Ordinarily, a general contractor is not liable for a subcontractor's negligence. However, a general contractor may be held liable if it failed to take 'reasonable steps within its supervisory and coordinating authority' to guard against 'readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.' " *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 5-6; 574 NW2d 691 (1997), quoting *Funk v Gen Motors Corp*, 392 Mich 91, 104; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29; 323 NW2d 270 (1982) (citation omitted).

That is, for a general contractor to be held liable under the "common work area doctrine," a plaintiff must show that (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Ormsby v Capital Welding, Inc*, 471 Mich 45, 54; 684 NW2d 320 (2004).]

The failure to establish any one of the four elements is fatal to a common work area claim. *Id*. at 59-60.

Defendant's challenge on appeal is limited to whether plaintiff created a question of fact on the third element. Specifically, defendant argues that the trial court's ruling improperly conflated the third and fourth elements. It asserts a high degree of risk to a significant number of workers must be calculated at the exact time of the injury, as opposed to over the course of the entire project. Thus, defendant contends, the trial court erred when it found at least eight people were subjected to the hazard of working on the roof without fall protection, because only two other workers were on the roof at the time plaintiff fell.

The common work area doctrine can be viewed "as an effort to distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard." *Hughes*, 227 Mich App at 8. Accordingly, a common work area is one in which employees of two or more subcontractors eventually work. *Id*. at 6. Although a construction project may contain one or more common work areas, the third element of a common work area claim is met only if a specific danger creates a high degree of risk to a significant number of workmen in that common work area. *Ormsby*, 471 Mich at 54.

The specific danger, then, must be identified to determine whether it poses a high degree of risk to a significant number of workers. Here, the parties and the trial court agree that the specific danger at issue was the risk of working on the roof without fall protection. Defendant

asserts, however, that a significant number of workers must be exposed to the danger at the time of the injury, citing *Ormsby*, 471 Mich at 59 n 12. Note 12 states, in part: "The high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed." *Id*.

Defendant cites a number of unpublished decisions in which this Court has applied note 12 to limit the scope of the third element to the exact time the plaintiff was injured. At first glance, these cases appear to support defendant's argument that the third element of a common work area claim must be analyzed at the time of the injury. A review of those decisions, however, reveals limitations on their applicability to the circumstances and specific danger at issue in this case. Many, for example, involved dangers that were not necessarily existent throughout the project or were isolated in nature.

Further, as plaintiff asserts, defendant's argument ignores that the duration of a danger must necessarily be considered when analyzing whether a danger created a high degree of risk to a significant number of workmen. Reading *Hughes* and *Ormsby* in the context of the purpose of the common work area doctrine—to place ultimate responsibility on general contractors for job safety in areas where a substantial number of subcontractor employees may be exposed to a risk of danger—*Hughes*, 227 Mich App at 8-9, we find a genuine issue of material fact regarding the third element of plaintiff's common work area claim. Although plaintiff testified that only two other Bristol employees were on the roof at the time of his fall, he produced evidence that many other subcontractors may have been exposed to the danger of working on the roof without fall protection throughout the project. In his affidavit, plaintiff attested that Bristol had a minimum of six workers "working from the tops of the second story walls and the trusses which supported the roof during the 30 days prior to [his] injury," and none used fall protection. Steve Kloc, Bristol's owner, also testified that workers did not use fall protection. Beyond Bristol, Jason Pomaville, the operator of a roofing subcontractor on the project, attested he ran a crew of five to six roofers, in addition to himself, all of whom worked on the roof of the project without fall protection. Specifically, he stated:

> I do not recall the names of the men on my crew who installed shingles during the construction of the project . . ., but that crew consisted of five to six men, all of whom worked on the roof. I also worked on the roof.
>
> * * *
>
> During the period I served as a subcontractor on Centennial Home Group projects I and my crew did not use fall protection devices/precautions of any kind. We did not use fall protection precautions on the . . . West Bloomfield . . . project.

Further, Stefano Mularoni, defendant's owner, testified that he never saw the Bristol crew or other subcontractors using fall protection. And David Smith, the project superintendent, testified that a variety of subcontractors generally work on the roofs of residential projects, and he in general seldom saw workers using fall protection or himself enforced the use of fall protection.

Viewing this evidence in a light most favorable to plaintiff, there is a genuine issue of material fact regarding whether a significant number of workers were exposed to the risk of

working on the roof of the project without fall protection. The evidence suggests that the number of workers exposed to the risk likely exceeded six, a number which our Supreme Court has found not to be a significant number for purposes of the common work area doctrine. See *Alderman v JC Dev Communities, LLC*, 486 Mich 906, 906 (2010) ("The only employees exposed to the risk of electrocution were two to six employees of one subcontractor, including the plaintiff, and therefore there was not a high degree of risk to a significant number of workers."). See also *Hughes*, 227 Mich App at 7-8 (finding that four workers is not a significant number for purposes of the third element).

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle