*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICAH VINCENT,

      Plaintiff-Appellee/Cross-Appellee,

v

DEMARIA BUILDING COMPANY, INC.,

      Defendant/Cross-Plaintiff-Appellant,

and

TURNER-BROOKS, INC.,

      Defendant/Cross-Defendant-Cross-
      Appellant.

UNPUBLISHED
December 22, 2022

No. 357989
Oakland Circuit Court
LC No. 2020-179511-NO

MICAH VINCENT,

      Plaintiff,

v

DEMARIA BUILDING COMPANY, INC.,

      Defendant/Cross-Plaintiff-Appellant,

and

TURNER-BROOKS, INC.,

      Defendant/Cross-Defendant-Appellee.

No. 357991
Oakland Circuit Court
LC No. 2020-179511-NO

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In Docket No. 357989, defendant, DeMaria Building Company, Inc. (hereinafter "defendant general contractor") appeals by leave granted[1] the circuit court's order denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on plaintiff Micah Vincent's claims of negligence, common-work-area liability, and premises liability against defendant general contractor. Defendant Turner Brooks, Inc. (hereinafter "defendant subcontractor") cross-appeals the circuit court's same order also denying its motion for summary disposition under MCR 2.116(C)(10) on plaintiff's claim of negligence against defendant subcontractor. In Docket No. 357991, defendant general contractor appeals by leave granted[2] the circuit court's order denying its motion for summary disposition under MCR 2.116(C)(10) on its claim of contractual indemnification against defendant subcontractor. In Docket No. 357989, we reverse in part, vacate in part, and remand for further proceedings. In Docket No. 357991, we affirm.[3]

## I. BACKGROUND

Defendant general contractor was the general contractor on a large commercial construction project, known as the Beaumont Shared Services Project, in Southfield, Michigan. The project involved a six-story remodel and the work area, at the time of the subject incident, was a large open floor plan. Defendant general contractor entered into multiple contracts with subcontractors to complete the work, including plumbers, electricians, carpenters, and insulators, as well as defendant subcontractor to hang and finish drywall. The subcontract between defendant general contractor and defendant subcontractor contained an indemnity provision in favor of defendant general contractor.

On a Saturday in July 2018, plaintiff was working on the third floor of the jobsite as a certified mechanical insulator for subcontractor Master Mechanical Insulation, Inc. Plaintiff's job was to insulate heating and cooling pipes on the ceiling next to a column; this role required him to climb an eight-foot ladder, insulate the pipe, come back down, and move the ladder to insulate the next section of pipe. At the time, no other trades were working within 25 feet of plaintiff. At one point, plaintiff climbed the ladder and, when he came back down, there was a drywall cart on the opposite side of the column that he had not seen before. Plaintiff noticed that the drywall cart was full and there were six extra pieces of drywall leaning up against the cart. Immediately after he came down off the ladder and before he could even take a step, an unknown man walked past the

---

[1] *Vincent v DeMaria Bldg Co, Inc*, unpublished order of the Court of Appeals, entered December 15, 2021 (Docket No. 357989).

[2] *Vincent v DeMaria Bldg Co, Inc*, unpublished order of the Court of Appeals, entered December 15, 2021 (Docket No. 357991).

[3] These appeals are being submitted with Docket No. 359798.

-2-

drywall cart, brushing up against it, which caused the cart to move and fall onto plaintiff's legs and crush his ankle.[4]

On the day of the accident, Ward Dryer, a drywall finisher employed by defendant subcontractor, was working on the same floor as plaintiff. Before the accident, Dryer and another employee of defendant subcontractor, Lee Sopha, moved the drywall cart between two columns in order to access a wall. While Dryer was working on one of the columns, he heard the drywall cart fall and plaintiff scream; he did not see the incident because he had his back to plaintiff. According to Dryer, no one else was in the immediate vicinity at the time of the accident.

Marty Huizar, defendant general contractor's corporate safety manager, inspected the cart after the incident and found nothing physically wrong with it; the "wheels were firm" and the "bracing was intact." Daniel Bongero, defendant subcontractor's field superintendent, indicated that the cart, at the time of the accident, was loaded with 14 sheets of drywall, 90 pounds each, and that the weight capacity of the cart was 3,000 pounds. Consequently, the cart was loaded with 1,260 pounds of drywall boards, under full capacity. Numerous workmen, who did not see the accident, submitted statements contemporaneous with the incident indicating that the accident could have been avoided had the cart not been "overloaded."

Plaintiff eventually filed a complaint alleging negligence, common-work-area liability, and premises-liability claims against defendant general contractor and a negligence claim against defendant subcontractor. Defendants answered the complaint and defendant general contractor also filed a cross-claim against defendant subcontractor seeking indemnification under the subcontract.

Defendants eventually moved for summary disposition under MCR 2.116(C)(10), generally arguing that the evidence did not support plaintiff's claims. Defendant general contractor also moved for summary disposition under MCR 2.116(C)(10) on its indemnification claim. The circuit court denied defendants' motion with respect to plaintiff's claims, finding that genuine issues of material fact on each of plaintiff's claims precluded summary disposition. The circuit court also denied summary disposition on defendant general contractor's indemnification claim, finding that the indemnification provision had not been triggered.

## II. STANDARD OF REVIEW

This Court reviews de novo a circuit court's decision on a motion for summary disposition. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). Summary disposition under MCR 2.116(C)(10) is proper if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law. *Bergen v Baker*, 264 Mich App 376, 381; 691 NW2d 770 (2004). In reviewing the circuit court's decision, this Court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the

---

[4] Initially, plaintiff reported to defendant general contractor's project superintendent that the accident happened when plaintiff "bumped the drywall cart and it fell over on top of him."

burden of proof . . . on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court reviews de novo issues of contract interpretation. *Ajax Paving Indus, Inc v Vanopdenbosch Constr Co*, 289 Mich App 639, 643; 797 NW2d 704 (2010).

## III. DOCKET NO. 357989

### A. NEGLIGENCE

Defendant general contractor first argues that the circuit court erred by denying its motion for summary disposition on plaintiff's negligence claim. In particular, defendant general contractor posits that summary disposition should have been granted because plaintiff failed to offer any evidence that defendant general contractor breached a duty of care it owed to plaintiff, or proximately caused the accident. We agree.

Negligent conduct involves an unreasonable risk of harm. *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993). "The requisite elements of a negligence cause of action are that the defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered." *Id*. "The duty element questions whether an actor has a legal obligation to so govern his actions as not to unreasonably endanger the person or property of others." *Id.* (quotation marks and citation omitted).

Having reviewed the record, we conclude that the evidence does not support plaintiff's negligence claim. Assuming defendant general contractor owed plaintiff some duty to make the premises safe, nothing in the record indicates that defendant general contractor breached this duty. None of defendant general contractor's employees were involved in loading or placing the cart near the column. And there is no evidence that defendant general contractor caused the cart to tip. Defendant general contractor simply had no involvement with the cart and, thus, cannot be held liable on a direct negligence theory.

On appeal, plaintiff does not contest that no evidence supports his direct negligence claim. Instead, plaintiff relies on the doctrine of res ipsa loquitur. Plaintiff argues that the cart should not have tipped in the absence of someone's negligence, defendant general contractor was in control of the area, plaintiff did not load or move the cart, and evidence of how the cart was overloaded and placed near plaintiff's ladder would be more accessible to defendant general contractor than plaintiff. "[W]hether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 19; 930 NW2d 393 (2018).

"The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Jones v*

*Porretta*, 428 Mich 132, 150; 405 NW2d 863 (1987).  To avail himself of the doctrine of res ipsa loquitur, plaintiff must show:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
>
> (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.  [*Pugno*, 326 Mich App at 19 (quotation marks and citation omitted).]

Further, "[a]lthough plaintiff must establish that the event was of a kind that ordinarily does not occur in the absence of negligence, plaintiff must also produce some evidence of wrongdoing beyond the mere happening of the event." *Id*. at 19-20.

Considering the evidence most favorably to plaintiff does not support application of the doctrine.  Even assuming the cart would not tip over in the absence of some negligent act, plaintiff cannot satisfy all the elements necessary for the application of res ipsa loquitur.  Mainly, the cart was not within the exclusive control of defendant general contractor.  Rather, defendant subcontractor's employees admitted to moving the cart to its place near the column on the date of the accident and plaintiff testified that an unknown person nudged the cart making it tip.  Additionally, defendant general contractor was not better positioned to determine the true explanation of the accident, given that defendant subcontractor owned and operated the cart and plaintiff was an eye witness to the event.  Under these circumstances, we conclude that plaintiff cannot avail himself of the doctrine of res ipsa loquitur.  Consequently, we conclude that the circuit court erred by denying summary disposition in favor of defendant general contractor on plaintiff's negligence claim.

### B.  COMMON-WORK-AREA LIABILITY

Defendant general contractor next argues that denial of summary disposition on plaintiff's common-work-area claim was erroneous because plaintiff cannot establish any of the elements necessary for such a claim.  Specifically, defendant general contractor asserts that it did not fail to take reasonable steps to guard against readily observable and avoidable dangers, a significant number of workers was not exposed to the alleged hazard, the drywall cart did not create a high-degree of risk, and the work area was not a common work area.  We agree.

"Ordinarily, a general contractor is not liable for a subcontractor's negligence." *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 5; 574 NW2d 691 (1997).  However, the common-work-area doctrine provides a narrow exception to this common-law rule of nonliability. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 48; 684 NW2d 320 (2004).  Under this doctrine,

a plaintiff must prove four elements: (1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Id*. at 57.]

Failure to satisfy any one of these four elements is fatal to a common-work-area claim. *Id*. at 59.

In our view, plaintiff's claim necessarily fails under the third element because there was not a high-degree of risk to a significant number of workers. Considering the evidence most favorably to plaintiff, there were at most four workers exposed to the allegedly hazardous cart. These workmen included Dryer, Sopha, plaintiff, and the unknown person who nudged the cart. A total of four workmen is not a significant number of workmen for purposes of the common-work-area doctrine. For example, in *Hughes*, 227 Mich App at 7-8, this Court concluded that four workmen exposed to the same danger did not amount to a significant number of workmen. Likewise, the Supreme Court in *Alderman v JC Dev Communities, LLC*, 486 Mich 906, 906; 780 NW2d 840 (2010), determined that two to six workmen exposed to the same danger was not a significant number of workmen for purposes of the common-work-area doctrine. Under these circumstances, no question of fact exists that there was not a high-degree of risk to a significant number of workmen. Consequently, the circuit court erred by denying summary disposition in favor of defendant general contractor on plaintiff's common-work-area claim.[5]

## C. PREMISES LIABILITY

Finally, defendant general contractor argues that plaintiff cannot state a legally cognizable premises-liability claim against it because defendant general contractor did not have possession and control over the land. We agree.

"Generally, a premises possessor owes a duty of care to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 328; 683 NW2d 573 (2004). "Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

"[T]he invitee status of a plaintiff, alone [however], does not create a duty under premises liability law unless the invitor has possession and control of the premises on which the plaintiff was injured." *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 565; 563 NW2d 241 (1997). In particular:

A 'possessor' is defined as:

---

[5] Because failure to establish any one of the elements of a common-work-area claim is fatal, we do not need to consider defendant general contractor's other arguments.

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Ownership alone is not dispositive. Possession and control are certainly incidents of title ownership, but these possessory rights can be "loaned" to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility. [*Id.* at 568 (quotation marks, citation, and emphasis omitted).]

In the premises-liability context, this Court has defined "possession" to mean "the right under which one may exercise control over something to the exclusion of all others[.]" *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 703; 644 NW2d 779 (2002) (quotation marks, citation, and emphasis omitted).

In this matter, there is no evidence that defendant general contractor possessed the premises to the exclusion of all others. Beaumont was the owner of the property, not defendant general contractor. Instead, as general contractor, defendant general contractor oversaw the day-to-day operation of the construction site; such oversight is not synonymous with possession to the exclusion of others. Notably, plaintiff suggests otherwise by asserting in a conclusory manner that defendant general contractor was a possessor of the premises as the general contractor of the project. Plaintiff, however, cites no authority that a general contractor is necessarily a premises possessor by virtue of its role as a general contractor. Under these circumstances, defendant general contractor did not have possession or control over the property at issue. Consequently, we conclude that plaintiff's premises-liability claim fails and that the circuit court erred by denying defendant general contractor's motion for summary disposition on plaintiff's premises-liability claim.

## D. CROSS-APPEAL

On cross-appeal, defendant subcontractor argues that the circuit court erred by denying its motion for summary disposition on plaintiff's negligence claim. In particular, defendant subcontractor argues that plaintiff failed to proffer any evidence of causation, beyond mere speculation, to support his negligence claim and, thus, summary disposition should have been granted in its favor. In our view, consideration of plaintiff's argument is premature because the circuit court failed to consider whether the expert testimony of causation that plaintiff proffered was substantively admissible for summary disposition purposes.

On a motion for summary disposition under MCR 2.116(C)(10), "the reviewing court should evaluate a motion . . . by considering the *substantively admissible* evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (emphasis added). While the evidence need not be in admissible form, it must be substantively admissible, meaning it must be admissible in content. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). A party relying

on expert testimony to survive summary disposition must demonstrate that it will be admissible at trial before it can be appropriately considered for summary disposition purposes. *Amorello v Monsanto Corp*, 186 Mich App 324, 331-332; 463 NW2d 487 (1990).

In this matter, defendant subcontractor challenged the expert's testimony as inadmissible under MRE 702 and MCL 600.2955(1).[6] The circuit court made no ruling on the admissibility of the expert's testimony and it is unclear from its ruling denying summary disposition whether it considered the expert's opinion. Because a court must consider only substantively admissible evidence in ruling on a summary disposition motion, we vacate the court's order denying summary disposition on plaintiff's negligence claim against defendant subcontractor and remand to the circuit court for it to consider whether the expert's testimony is admissible under MRE 702 and MCL 600.2955(1).

## IV. DOCKET NO. 357991

In Docket No. 357991, defendant general contractor argues that the circuit court erred by determining that it is not entitled to indemnification under the subcontract between it and defendant subcontractor. According to defendant general contractor, the subcontract's indemnity provision is broad and requires indemnification because plaintiff's injuries arose out of and in connection with defendant subcontractor's performance of its work.

"An indemnity contract is construed in accordance with the rules for the construction of contracts in general." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 172; 530 NW2d 772 (1995). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[.]" *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020) (quotation marks and citation omitted). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. (quotation marks and citation omitted). Courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). When the language of an indemnity provision is clear and unambiguous, the contract must be enforced as written. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004).

The indemnity provision of the subcontract at issue, provides:

> To the fullest extent permitted by law, *Subcontractor shall* secure, defend, protect, *hold harmless and indemnify* the Owner, *Contractor* and the Architect, Engineer or other design professional and any of their respective agents, servants and employees *against any actual or threatened liability*, loss, claims, demands, suits, costs, fines and expenses whatsoever, *arising from bodily injury*, sickness, disease (including death resulting therefrom), *of any persons*, or the damage or destruction of any property, including contamination of or adverse effects to

---

[6] MRE 702 governs expert testimony, and MCL 600.2955(1) governs scientific expert opinion in tort actions.

property, or loss of use, *arising out of or in connection with the performance of any Work relating to this Contract*, including extra work assigned to the Subcontractor, *based upon any act or omission, negligent or otherwise, of (a) Subcontractor* or any of its agents, employees or servants, (b) *any sub-subcontractor*, supplier or materialman of the Subcontractor, or any agents, employees or servants thereof, *and (c) any other person or persons*. The obligation of indemnification contained herein shall exclude only those matters in which the claim arises out of the specific and affirmative allegations of the sole negligence of the Owner, the Architect, the Contractor or any of their respective agents, servants and employees, and then such exclusion shall become effective only if and after such specific and affirmative allegations are judicially affirmed. [Emphasis added.]

According to the language of this provision, defendant subcontractor is required to indemnify defendant general contractor "against any actual or threatened liability . . . arising from bodily injury . . . of any persons . . . arising out of or in connection with the performance of any work relating to this contract . . . based upon any act or omission, negligent or otherwise . . . of Subcontractor," among any other persons. This plain and clear language requires (1) an actual or threatened liability arising from a person's bodily injury (2) arising out of or in connection with the performance of defendant subcontractor's work (3) based upon any "act or omission, negligent or otherwise," on the part of the defendant subcontractor or other persons. In this matter, however, there is not yet a finding of defendant subcontractor's or another person's "act or omission, negligent or otherwise." Therefore, we hold this indemnity issue in abeyance pending remand of the issue in the cross-appeal for the trial court to make factual findings.

## V. CONCLUSION

Reversed in part, vacated in part, and remanded to the circuit court for further proceedings consistent with this opinion in Docket No. 357989. The indemnity issue in Docket No. 357991 is held in abeyance pending the remand in Docket No. 357989. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

# Court of Appeals, State of Michigan

# ORDER

Micah Vincent v Demaria Building Company Inc

Docket No.     357989; 357991

LC No.         2020-179511-NO

Kathleen Jansen
Presiding Judge

Deborah A. Servitto

Michael F. Gadola
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, this matter is REMANDED for the trial court to determine whether the expert testimony on causation that plaintiff proferred was substantively admissible under MRE 702 and MCL 600.2955(1) in considering plaintiff's negligence claim against defendant subcontractor. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

In Docket No. 357991, the case is HELD IN ABEYANCE pending the REMAND and trial court's decision on plaintiff's negligence claim against defendant subcontractor.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 22, 2022
Date

_____
Chief Clerk